James A. HARRIS, Jr., et al.,
Plaintiffs-Appellants,

v.

W. D. SAMUELS, Jr., et al.,
Defendants-Appellees.

No. 29683.

United States Court of Appeals,
Fifth Circuit.

March 16, 1971.

Rehearing Denied April 7, 1971.

George C. Longshore, Birmingham, Ala., Richard G. Singer, Cincinnati, Ohio, Reber F. Boult, Jr., Charles Morgan, Jr., Norman Siegel, Atlanta, Ga., for plaintiffs-appellants; Melvin L. Wulf, New York City, of counsel.

Paul E. Skidmore, Walter P. Crownover, Tuscaloosa, Ala., Frank J. Mizell, Jr., Montgomery, Ala., for defendants-appellees.

Before RIVES, AINSWORTH and MORGAN, Circuit Judges.

RIVES, Circuit Judge:

The plaintiffs Harris, Knowles, Robert Smith and Gomel are students at the University of Alabama in Tuscaloosa County, and the plaintiff Anne Smith is the wife of Robert Smith. They bring this action on behalf of themselves and as members of a class composed of students and spouses of students attending institutions of learning located in Tuscaloosa County, namely the University of Alabama and Stillman College. The defendants are the Tuscaloosa County Board of Registrars and the three members of that Board.[1] The relief sought consists of preliminary and permanent injunctions requiring defendants to register plaintiffs and to refrain from denying residents the right to vote solely because they are students or the spouses of students. Federal jurisdiction is alleged under 28 U.S.C.A. § 1331, § 1343 and 42 U.S.C.A. § 1983.

After a hearing Judge Grooms granted a temporary injunction which prevented the defendants

" * * * from denying registration to any applicant, where the statutory period of residence and other requirements have been met, solely because the applicant is a student or the spouse of a student, when the applicant will sign a sworn statement that applicant presently intends to remain in Tuscaloosa County permanently or for an indefinite period after completing of applicant's studies at the University, or after his or her spouse completes his or her studies there, and does not intend and will not vote in another county within or without the state, in addition to Tuscaloosa County."

Upon submission for permanent injunctive relief, Chief Judge Lynne dissolved the temporary injunction, denied the plaintiffs relief, and dismissed the action. Pursuant to Rule 52, Fed.R. Civ.P., Judge Lynne found the facts specifically as follows:

*"Findings of Fact*

"1. Prior to the filing of this suit the policy of the Board of Registrars of Tuscaloosa County, Alabama (the Board) was to register students who were, in the opinion of the Board, bona fide residents or domiciliaries of such county.

"2. The Board has not denied student voter applications for the single reason that the applicants were students but has consistently required some evidence to support a mere statement of intent from which it might be inferred that the student applicant intended to reside in Tuscaloosa County permanently or for an indefinite period of time.

"3. During the period from January, 1966, to October 14, 1968, more than 500 students were registered by the Board; other applications, as to which there is no record evidence, were rejected. During this period the

---

1. See Code of Alabama, Recompiled 1958, Title 17, § 21 et seq.

Board indiscriminately and even handedly applied certain standards in determining whether students would be registered. After ascertaining that the student had or had not been a registered voter of another county or state, the Board uniformly proceeded as follows:

"(a) The Board upon determining that an applicant was a student or a wife of a student attempted to determine by oral examination whether or not he or she had resided in the State, County and Precinct for a sufficient length of time to enable him or her to register.

"(b) Then attempted to determine whether or not they would reside in Tuscaloosa County after the completion of his or her studies or the studies of her spouse, and accepted among other things as supporting evidence as his or her statement or of his or her intention to so remain, the following:

"(1) Whether or not such applicant had attained a residence of Tuscaloosa County prior to his or her entry in school.

"(2) Whether or not the applicant's parents resided in Tuscaloosa County.

"(3) Whether or not after the student had come to Tuscaloosa as a student he or she had dropped from school for a sufficient period of time to acquire a residence.

"(4) Whether or not such student owned property, a home or a business.

"(5) Whether or not if employed, his employment was primary and school secondary.

"(6) Whether or not such student had applied for and had been accepted for a position in Tuscaloosa upon graduation.

"(7) Any other factor which tended to convince the Board of his or her intent to reside in Tuscaloosa either permanently or for an indefinite period of time.

"(8) Further that in determining the eligibility of a male student, the Board did not consider the domicile of the wife, but rather gave to the wife the domicile of her husband, except in the case where the wife had been an established resident of Tuscaloosa County prior to her marriage.

"4. Following the issuance of a temporary injunction by Judge Grooms on October 16, 1968, and a rule to show cause on November 4, 1968, it was agreed that until a final hearing on the merits the Board would register all students who had been physically present in Tuscaloosa County for the requisite statutory period and who would sign an oath that they intended to reside in Tuscaloosa County permanently or for an indefinite time. More students were registered in equivalent periods preceding such agreement than subsequent thereto."

As the Court's conclusions of law, Judge Lynne adopted "the exceptional memorandum prepared by Robert L. Potts, Law Clerk."

Upon appeal the plaintiffs vigorously attack both the findings of fact and the conclusions of law of the district court and insist that the defendants are denying to them the equal protection of the laws in violation of the Fourteenth Amendment.

■ If the interlocutory or permanent injunction sought by the plaintiffs were upon the ground of the unconstitutionality of any State statute, a district court of three judges would be required under 28 U.S.C. § 2281, *et seq.*, and jurisdiction of this appeal would lie in the Supreme Court under 28 U.S.C. § 1253. Instead, however, the plaintiffs' ground for seeking an injunction is that the defendants have erroneously construed the applicable Alabama statute in a manner which denies the equal protection of the laws to the plaintiffs and the class they

represent. As stated in the brief of plaintiffs-appellants, pages 11 and 12:

"The Board raised Ala.Code tit. 17, § 17 in defense of their practice. Plaintiffs' position was and is that the Board's construction of the statute is unconstitutional, and that its proper and constitutional construction would not permit the Board's practice. The statute reads:

"No person shall lose or acquire a residence either by temporary absence from his or her place of residence without the intention of remaining, or by being a student of an institution of learning, or by navigating any of the waters of this state, the United States, or the high seas, without having acquired any other lawful residence, or by being absent from his or her place of residence in the civil or military service of the state, or the United States; neither shall any soldier, sailor or marine, in the military or naval service of the United States, acquire a residence by being stationed in this state.

"In invalidating Texas' prohibition against servicemen's voting in Carrington v. Rash, 380 U.S. 89 [85 S.Ct. 775, 13 L.Ed.2d 675] (1965), the Supreme Court, referring specifically to this and similar provisions from other states, construed the clauses involving servicemen as not being absolutely determinative of residence. 380 U.S. at 92 n. 3 [85 S.Ct. 775].

"The annotations indicate that the Alabama appellate courts have not chosen between the Board's construction (a bar to or at least a strong presumption against registration of county non-native students) and that of plaintiffs (a saving feature for those students whose interest remains with their parental home)."

According to the plaintiffs' argument, a proper construction of Alabama Code, Title 17, § 17 will result in removing the restrictions imposed by the defendants on their rights to vote in Tuscaloosa County which they claim to be a denial of the equal protection of the law.

Decision of whether Judge Lynne's findings of fact are clearly erroneous in any part would be difficult. A decision on what restrictions or qualifications can be constitutionally imposed upon students and their spouses as a prerequisite to voting in the county in which the college or university is located would be an extremely difficult and uncertain task in the present state of development of the jurisprudence. The plaintiffs argue that the Supreme Court has developed a particularly stringent application of the equal protection clause in voting cases, and that the state interest relied on to justify the restrictive classification must be "compelling," not merely "rational" or "legitimate," citing: Cipriano v. City of Houma, 1969, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; Kramer v. Union Free School District, 1969, 395 U.S. 621, 627–628, 89 S.Ct. 1886, 23 L.Ed.2d 583; Harper v. Virginia State Board of Elections, 1966, 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169.

The most recent case on the subject, Oregon v. Mitchell, 1970, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272, discloses that the Justices of the Supreme Court disagree among themselves as to whether the equal protection clause of the Fourteenth Amendment restricts the power of the States to set voter qualifications, and if so, the extent of such restrictions. Justice Harlan strongly supported his view that "the Fourteenth Amendment was never intended to restrict the authority of the states to allocate their political power as they see fit * * *." Justices Brennan, White and Marshall supported some of the views now advocated by the plaintiffs:

"The right to vote has long been recognized as a 'fundamental political right, because preservative of all rights.' Yick Wo v. Hopkins, 118 U.S. 356, 370 [6 S.Ct. 1064, 1071, 30 L.Ed. 220] (1886); see Reynolds v. Sims, 377 U.S. 533, 562 [84 S.Ct. 1362, 1381, 12 L.Ed.2d 506] (1964); Williams v.

Rhodes, 393 U.S. 23, 31 [89 S.Ct. 5, 10, 21 L.Ed.2d 24] (1968). 'Any unjustified discrimination in determining who may participate in political affairs undermines the legitimacy of representative government.' Kramer v. Union Free School District, 395 U. S., at 626 [89 S.Ct. at 1889]. Consequently, when exclusions from the franchise are challenged as violating the Equal Protection Clause, judicial scrutiny is not confined to the question whether the exclusion may reasonably be thought to further a permissible interest of the State. Cf. Metropolitan Casualty Ins. Co. of New York v. Brownell, 294 U.S. 580, 583–584 [55 S. Ct. 538, 539–540, 79 L.Ed. 1070] (1935). 'A more exacting standard obtains.' Kramer v. Union Free School District, 395 U.S., at 633 [89 S.Ct. at 1892]. In such cases, 'the Court must determine whether the exclusions are necessary to promote a compelling state interest.' Id., at 627 [89 S.Ct. at 1890; Cipriano v. City of Houma, 395 U.S. 701, 704 [89 S.Ct. 1897, 1899, 23 L.Ed.2d 647] (1969)."

Justice Black was of the view that every distinction on account of race was forbidden, but that as to discriminations other than those on account of race, the rule was different:

"Above all else, the Framers of the Civil War Amendments intended to deny to the States the power to discriminate against persons on account of their race. Loving v. Virginia, 388 U.S. 1 [87 S.Ct. 1817, 18 L.Ed.2d 1010] (1967); Gomillion v. Lightfoot, 364 U.S. 339 [81 S.Ct. 125, 5 L.Ed.2d 110] (1960); Brown v. Board of Education, 347 U.S. 483 [74 S.Ct. 686, 98 L.Ed. 873] (1954); Slaughter House Cases, 16 Wall. 36, 71–72 [21 L.Ed. 394] (1872). While this Court has recognized in some instances that the Equal Protection Clause of the Fourteenth Amendment protects against discriminations other than those on account of race, see Reynolds v. Sims, 377 U. S. 533 [84 S.Ct. 1362, 12 L.Ed.2d 506] (1964); Hadley v. Junior College District, 397 U.S. 50 [90 S.Ct. 791, 25 L. Ed.2d 45] (1970); see also Kotch v. Board of River Port Pilot, 330 U.S. 552 [67 S.Ct. 910, 91 L.Ed. 1093] (1947), the cases cited therein, it cannot be successfully argued that the Fourteenth Amendment was intended to strip the States of their power, carefully preserved in the original Constitution, to govern themselves. The Fourteenth Amendment was surely not intended to make every discrimination between groups of people a constitutional denial of equal protection. Nor was the Enforcement Clause of the Fourteenth Amendment intended to permit Congress to prohibit every discrimination between groups of people. On the other hand, the Civil War Amendments were unquestionably designed to condemn and forbid every distinction, however trifling, on account of race."

None of the Justices disagreed with the following views eloquently expressed by Justice Black:

"No function is more essential to the separate and independent existence of the States and their governments than the power to determine within the limits of the Constitution the qualifications of their own voters for state, county, and municipal offices and the nature of their own machinery for filling local public offices. Pope v. Williams, 193 U.S. 621 [24 S.Ct. 573, 48 L.Ed. 817] (1904); Minor v. Happersett, 21 Wall. 162 [22 L.Ed. 627] (1874)."

■ In a matter of such importance to the States and their governments, a federal court should be slow to intervene, but should instead avoid needless conflict with the administration by the State of its own affairs. Cf. Alabama Public Service Commission v. Southern Railway Co., 1951, 341 U.S. 341, 349, 350, 71 S. Ct. 762, 95 L.Ed. 1002.

■ Neither the federal district court nor this Court should construe the State statute, for that would be a mere tentative answer which may be displaced to-

morrow by a controlling State adjudication. Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 500, 61 S.Ct. 643, 85 L.Ed. 971. Nor should the federal courts proceed to a premature and perhaps unnecessary constitutional adjudication. Id.

In short the federal district court, upon final submission, properly dissolved the temporary injunction; it should not, however, have proceeded to a decision on the merits as to permanent injunctive relief but should have abstained from further proceeding and retained jurisdiction until the State courts have authoritatively construed the State statute or until efforts to obtain such an adjudication have been exhausted. *See* Government and Civic Employees Organizing Committee, C. I. O. v. Windsor, 1957, 353 U.S. 364, 367, 77 S.Ct. 838, 1 L.Ed.2d 894. If the plaintiffs then desire to proceed further in the federal district court, appropriate amendments to the pleadings should be permitted, and, if required, a three-judge district court may be convened. See 28 U.S.C. § 2281, *et seq.*

Reversed and remanded.