**Lecil HANDER**

v.

**SAN JACINTO JUNIOR COL-
LEGE et al.**

**Civ. A. No. 71–H–52.**

United States District Court,
S. D. Texas,
Houston Division.

April 9, 1971.

Larry Watts, John G. Abbott, Houston, Tex., for plaintiff.

B. Jeff Crane, Jr., Vinson, Elkins, Searls & Smith, Houston, Tex., Baskin, Fakes & Stanton, Pasadena, Tex., for defendants.

MEMORANDUM OPINION

BUE, District Judge.

This is an action for injunctive relief, pursuant to 42 U.S.C. § 1983, against San Jacinto Junior College, its president and board of regents. Specifically, plaintiff seeks reinstatement and a permanent injunction against the continued enforcement of an appearance regulation against himself and other faculty members of the college. Plaintiff was discharged from his position as biology instructor at the college on January 11, 1971. The facts that led to this discharge will be briefly summarized. In September of 1969 plaintiff was hired as a full-time instructor at the college. The college had an unwritten policy at the time to the effect that faculty mem-

bers are not permitted to wear beards. In violation of this policy, plaintiff grew what might be termed a "full" beard in the summer of 1970. On December 22, 1970, the board of regents of the college promulgated, pursuant to their statutory authority to control and manage the college, the following regulation:

> Faculty members and all of the male employees of San Jacinto Junior College are required to be clean shaven, wear reasonable hair styles and have no excessively long sideburns.

Shortly thereafter, plaintiff was informed by administrative officials of the college that he must comply with this regulation. At plaintiff's request, a hearing was held on January 14, 1971, before the board of regents to discuss the propriety of plaintiff wearing a beard and violating the college's written regulation. Both plaintiff and his counsel were present at this hearing. At the conclusion of the hearing, plaintiff was given until January 18 either to comply with the regulation or be discharged. After plaintiff refused compliance, his employment was terminated, and he was paid the remainder of his salary for the school year 1970–71.

The parties are in agreement that plaintiff was discharged solely because he refused to comply with the college's appearance regulation. Plaintiff asserts that the regulation constitutes an unreasonable classification in violation of the equal protection clause of the Fourteenth Amendment. It is further alleged that the regulation was enacted to implement the personal tastes of the college officials and, as a result, is not reasonably related to the statutory authority of the board of regents to control and manage the college. Plaintiff, however, does not contend that the wearing of a beard is a mode of freedom of speech or expression under the First Amendment, nor that it is protected as a right to privacy.

Additionally, plaintiff does not contend that he was discharged in a manner so as to deny him procedural due process.

Defendants, on the other hand, contend that the wearing of a beard is a mere "style" of appearance and is not constitutionally protected. More importantly, defendants assert that this court should abstain from decision, since the regulation was promulgated pursuant to a state statute and, therefore, should be interpreted in a state court pursuant to state law.

San Jacinto Junior College is a public junior college organized under the laws of, and financially supported by, the State of Texas.[1] The defendants have acted under color of state law in promulgating the appearance regulation and in discharging plaintiff. This Court has jurisdiction pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

Initially, with regard to plaintiff's position as a public employee it should be acknowledged that a person does not have a constitutional right to government employment. This means that an employee "must comply with reasonable, lawful, and nondiscriminatory terms laid down by the proper authorities." Slochower v. Board of Higher Education, 350 U.S. 551, 555, 76 S.Ct. 637, 640, 100 L.Ed. 692 (1956). As a result, the states have a broad, but not unlimited, leeway in establishing the terms of public employment. Battle v. Mulholland, 439 F.2d 321 (5th Cir. 1971). The states also have an interest, as an employer, in regulating their employees in ways more restrictive than citizens who are not employees. Pickering v. Board of Education, 391 U.S. 563, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968). Therefore, the rights of the employees as citizens must be balanced against the state's interest in promoting efficient public service. Battle v. Mulholland, *supra;* Pred v. Board of Public Instruction, 415

---

1. The college is classified as a Union Junior College District and was established pursuant to Art. 2815h, Tex.Rev.Civ. Stat.Ann. (now Tex.Educ.Code Ann. §§ 51.004, 51.031–43, 51.063–65). It is a state educational agency. *See* Dealey v. Dallas County Junior College District, 434 S.W.2d 724 (Tex.Civ.App.—Waco 1968, writ. ref. n. r. e.).

F.2d 851 (5th Cir. 1969). However, an employee of a state agency has certain constitutional protections against exclusion from that employment on patently arbitrary or discriminatory grounds. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Cafeteria and Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

To ascertain the basis for the regulation now questioned, it is necessary to start with the Texas Constitution which provides that:

> A general diffusion of knowledge being essential to the preservation of the liberties and rights of the people, it shall be the duty of the Legislature of the State to establish and make suitable provision for the support and maintenance of an efficient system of public free schools.[2]

One of the statutes enacted to implement this provision provides for the creation of public junior colleges in the state. Further, the Coordinating Board of the Texas College and University System was granted the power to exercise general control over the public junior colleges.[3] Section 51.040 of the Texas Education Code, U.T.C.A. indicates that:

> A union junior college, a county junior college, or a joint-county junior college shall be governed, administered, and controlled by and under the direction of a board of trustees of seven members.

The board of trustees may vest this control in a board of regents. Tex.Rev.Civ. Stat.Ann. art. 2815k; Tex. Educ. Code Ann., Section 51.085.[4] As can readily be seen the statutes above stated provide for a general grant of power to the board of regents for the control and operation of the junior college.

■■ While general grants of power to administrative agencies are permissible to regulate some activities, other types of activities, such as personal liberties, can be regulated only pursuant to the lawmaking functions of a legislature. If that power is delegated, then there must be acceptable standards included within that delegation so that the agency can follow the policy of the statute. *See* Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965); Kent v. Dulles, 357 U.S. 116, 78 S.Ct. 1113, 2 L.Ed.2d 1204 (1958). In other words, the legislature must determine the policy of the law, and this function cannot be delegated. Panama Refining Co. v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446 (1935). The legislature can, however, authorize administrative officials to prescribe rules and regulations to implement the legislative enactments. This delegation should be specific to prevent intervention into protected activities of individuals. *See* Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940).

It is apparent that the Texas legislature has not authorized the regulation of the personal appearance of faculty members of public junior colleges nor authorized their discharge for violation of such regulations. They have, however, delegated to the board of regents the power to manage and control these institutions. As a result, the question would arise as to whether or not the board of regents exceeded their statutory authority in promulgating the appearance regulation. In this connection, it should be noted that it is well established in Texas

---

2. Tex.Const.Ann. art. VII, § 1, Vernon's Ann.St.

3. Tex.Educ.Code Ann. § 51.001(a). This includes the authority to "adopt standards for the operation of public junior colleges and [to prescribe] the rules and regulations for such colleges." *Id.* at (b) (3). Section 51.002(b) provides that:
   All authority not vested by this chapter or by other laws of the state in the coordinating board or in the Central Education Agency is reserved and retained locally in each of the respective public junior college districts or in the governing boards of such junior colleges as provided in the laws applicable.

4. *See also* Tex.Educ.Code Ann., § 21.209; Tex.Rev.Civ.Stat.Ann., art. 2815k, § 3.

that if a rule, order, or regulation promulgated by an agency exceeds the authority conferred by the statute, conflicts with the statute, or has no reasonable relation to the purpose of the statute, then it is not sustainable by the Texas courts. Rudman v. Railroad Comm., 162 Tex. 579, 349 S.W.2d 717 (1961); Teacher Retirement System v. Duckworth, 260 S.W.2d 632 (Tex.Civ.App.— Fort Worth 1953), opinion adopted, 153 Tex. 141, 264 S.W.2d 98 (1954); Kissick v. Garland Independent School District, 330 S.W.2d 708 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.); Passel v. Fort Worth Independent School District, 453 S.W.2d 888 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n. r. e.); Hailey v. Brooks, 191 S.W. 781 (Tex.Civ.App.— Fort Worth 1916, writ ref'd). See Cornette v. Aldridge, 408 S.W.2d 935 (Tex. Civ.App.—Amarillo 1966, writ mandamus overruled).

The foregoing analysis has led this Court to question the permissibility of exercising jurisdiction over this matter. Abstention is recognized by federal courts when a decision on the basis of a federal constitutional question can be avoided because the case may be disposed of on questions of state law. Railroad Comm. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); Harris v. Samuels, 440 F.2d 748 (5th Cir. 1971). In Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 640–641, 79 S.Ct. 455, 456, 3 L.Ed.2d 562 (1959) it was stated that:

> Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. * * * That is especially desirable where the questions of state law are enmeshed with federal questions. * * * [W]hen the state court's interpretation of the statute or evaluation of its validity under the

state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily.

This principle was reaffirmed in Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). Further, in Harris v. Samuels, supra, the Fifth Circuit Court of Appeals refused to exercise jurisdiction over a dispute which involved the propriety of a local board's actions, pursuant to a state statute, involving voting rights. It was indicated that:

> In a matter of such importance to the States and their governments, a federal court should be slow to intervene, but should instead avoid needless conflict with the administration by the State of its own affairs.

440 F.2d at 752. It cannot be denied that public education, including public institutions of higher learning, are of paramount interest to state and local governments in much the same way as are voting rights. *See* Brown v. Board of Education, 347 U.S. 483, 493, 74 S.Ct. 686, 98 L.Ed. 873 (1954).

The avoidance of needless conflict with state administration is primarily a matter of comity. This principle has recently been reaffirmed in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger*, it was stated that:

What the concept [comity] does represent is a system in which there is sensitivity to the legitimate interests of both State and National Governments, and in which the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with the legitimate activities of the States. It should never be forgotten that this slogan, "Our Federalism," born in the early struggling days of our Union of States, occupies

a highly important place in our Nation's history and its future.

401 U.S. at 44–45, 91 S.Ct. at 750.[5]

Recent decisions involving many varied areas of state concern have approved the principle that when a determination by a state court could end the litigation without the necessity of decision on a federal constitutional claim, then the federal court should abstain from decision. Coleman v. Ginsberg, 428 F.2d 767 (2d Cir. 1970); Florida Poultry Federation, Inc. v. Conner, 319 F. Supp. 158 (N.D.Fla.1970) (Three-Judge Court); Alexander v. Thompson, 313 F. Supp. 1389 (C.D.Cal.1970); Sanchez v. Wyman, 318 F.Supp. 827 (S.D.N.Y. 1970); Allegheny Airlines, Inc. v. Pennsylvania Public Utility Comm., 319 F. Supp. 407 (E.D.Pa.1970); Varian Associates v. Santa Clara, 317 F.Supp. 888 (N.D.Cal.1970); Gold v. Lomenzo, 314 F.Supp. 871 (S.D.N.Y.1970); Haakenson v. Parkhouse, 312 F.Supp. 929 (E.D. Pa.1970); Fhagen v. Miller, 312 F.Supp. 323 (S.D.N.Y.1970).

It is quite likely that a state court decision interpreting these statutes and regulation will foreclose any need for a decision by this Court of a federal question. As previously indicated, the Texas state courts could find that the actions of the board of regents violated the authority delegated to them by the legislature. Additionally, the Texas state courts could find that the statutes or regulation violate either the due process or equal protection clauses of the state constitution. *See* Tex.Const.Ann., art. I, §§ 3, 19; Abney v. Fox, 250 S.W. 210, 212 (Tex. Civ.App.—Austin 1923, writ ref'd); Zucht v. San Antonio School Board, 170 S.W. 840, 843 (Tex.Civ.App.—San Antonio 1914, writ ref'd). *See generally,* House of Tobacco, Inc. v. Calvert, 394 S.W.2d 654 (Tex.Sup.1965); Kissick v.

Garland Independent School District, 330 S.W.2d 708 (Tex.Civ.App.—Dallas 1959, writ ref'd n. r. e.).

The Court takes this position in recognition of the legitimate activities of the states in protecting state interests, one of which is the state's interest in having the validity of state statutes and regulations passed upon in the state courts. Furthermore, this Court is well aware of recent pronouncements to the effect that "hair cases" should be tried in a state court because that is a more proper forum.[6]

■■ As a result, and for the foregoing reasons, this Court will abstain from exercising its jurisdiction to pass upon the constitutional questions presented herein. This action is hereby dismissed. The Court recognizes that in this type of situation retention of jurisdiction pending a state determination of the state issues, rather than dismissal of the action, has been viewed generally as the more appropriate course to follow. However, in view of the recent trend in this area of the law as well as the special circumstances presented in this instance, it is concluded that dismissal is proper. These special circumstances include: (1) The fact that plaintiff's grievances can be adequately litigated in state court; (2) The fact that public education, including public institutions of higher learning, constitute a paramount interest to state and local governments;[7] and (3) The fact that federal courts must acknowledge a sensitivity to the legitimate interests of the state governments. It is in this broad spirit of comity without regard to other aspects of this case that the decision of this Court is reached.

The foregoing constitutes the Court's Findings of Fact and Conclusions of Law.

5. *See* Wisconsin v. Constantineau, 400 U.S. 433, 439–443, 91 S.Ct. 507, 27 L.Ed.2d 515, 520–522 (1971) (Chief Justice Burger, dissenting).

6. *See* Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971) (on motion to vacate a stay of injunction pending appeal) (Justice Black, Circuit Justice), motion denied, 401 U.S. 930, 91 S.Ct. 914, 28 L.Ed.2d 211 (1971); Alberda v. Noell, 322 F.Supp. 1379 (E.D. Mich., 1971).

7. *See generally* Press v. Pasadena Independent School District, 326 F.Supp. 550 (S.D.Tex., March 4, 1971).