Malcolm B. NICHOLLS, Jr. and Sylvia G. Nicholls, on behalf of themselves and all others similarly situated and Astrida Olds

v.

Gloria SCHAFFER, Secretary of the State of Connecticut, et al.

Civ. No. 14911.

United States District Court, D. Connecticut.

June 1, 1972.

Igor I. Sikorsky, Jr., Sikorsky & Barberie, Hartford, Conn., Rena Gordon, West Simsbury, Conn., for plaintiffs.

Robert K. Killian, Atty. Gen., Raymond J. Cannon, Barney Lapp, Asst. Attys. Gen., Hartford, Conn., for Gloria Schaffer, Sec. of State.

Alexander A. Goldfarb, Corp. Counsel, Anthony M. Tapogna, Asst. Corp. Counsel, Hartford, Conn., for Nicholas C. Bonadies and Howard J. Kaufman.

Before SMITH, Circuit Judge, and BLUMENFELD and ZAMPANO, District Judges.

## MEMORANDUM OF DECISION FINDINGS OF FACT AND CONCLUSIONS OF LAW

BLUMENFELD, District Judge:

In this case the plaintiffs challenge the validity of the six month residence requirement imposed by Connecticut on persons seeking to register to vote in the town where they reside as violative of the equal protection clause of the fourteenth amendment of the United States Constitution. This claim states a cause of action under 42 U.S.C. § 1983 and jurisdiction is properly laid under 28 U.S.C. § 1343(3).

## I.

The named plaintiffs, former residents and registered voters in West Hartford, Connecticut, moved to Hartford, Connecticut, on January 17, 1972. More than thirty days later, their applications for admission as electors in Hartford were denied on the ground that they did not satisfy the six month durational residence requirement imposed by the Connecticut Constitution, Art. VI, §§ 1 and 9,[1] and Conn.Gen. Stats. § 9–12.[2]

They have instituted this suit, on behalf of themselves and all other "adult residents of Hartford, Connecticut who have resided in said town less than six months and who are otherwise qualified for admission as electors in the Town of Hartford, Connecticut." The court finds that the class as so defined satisfies the requirements of Fed.R.Civ. P. 23(a) and (b) (2).[3] Although the named plaintiffs [3a] changed their residence only intrastate, there is a similar state requirement of six months town residence for admission as an elector in local elections which applies to persons who have moved to Connecticut from outside the state.[4]

---

1. "Sec. 1. Every citizen of the United States who has attained the age of twenty-one years, who has resided in the town in which he offers himself to be admitted to the privileges of an elector at least six months next preceding the time he so offers himself, who is able to read in the English language any article of the constitution or any section of the statutes of the state, and who sustains a good moral character, shall, on his taking such oath as may be prescribed by law, be an elector.

   \*   \*   \*   \*   ' \*

   "Sec. 9. Any person admitted as an elector in any town shall, if he removes to another town, have the privileges of an elector in such other town after residing therein for six months. The general assembly shall prescribe by law the manner in which evidence of the admission of an elector and of the duration of his current residence shall be furnished to the town to which he removes."

2. Section 9–12 provides:
   "Each citizen of the United States who has attained the age of twenty-one years, who has resided in the town in which he applies for admission to the privileges of an elector at least six months next preceding the time he so applies, and who, at the time of so applying, is able to read in the English language any article of the constitution or any section of the statutes of the state, and sustains a good moral character, shall, on taking the oath prescribed by law, be an elector. No idiot or mentally ill person shall be admitted as an elector."

3. Rule 23.
   "(a) *Prequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.
   "(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
   \*   \*   \*   \*   \*
   "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . . ."

3a. The claim of the intervening plaintiff, Astrida Olds, who became a Hartford resident October 15, 1971, has become moot and is dismissed.

4. Even though a former elector who moves intrastate may vote in statewide primaries and elections in the municipality where he previously resided and was registered, see Conn.Gen.Stats. § 9–40, 1969 Supp., and Public Act 756 (1971), the position of old and new state residents is precisely the same with respect to registering to vote in local elections in the town of their residence.

# II.

The defendants, state and local election officials,[4a] request the court to dismiss the case on the ground that the plaintiffs have failed to exhaust state administrative remedies. Exhaustion of state remedies is not required in a suit under the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1343, "where the constitutional challenge is sufficiently substantial, as here, to require the convening of a three-judge court." King v. Smith, 392 U.S. 309, 312 n. 4, 88 S.Ct. 2128, 2131, 20 L.Ed.2d 1118 (1968). It would be wholly unrealistic to expect a Board for Admission of Electors, see Conn.Gen.Stats. § 9–44, to rule squarely contrary to the state's constitutional and statutory commands. See Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); McNeese v. Board of Educ., 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963). The defendants also urge dismissal on the ground of mootness on the premise that the named plaintiffs will have become eligible for admission as electors prior to any impending elections. However, prior to July 17, 1972, when their residence in Hartford will be of six months duration and they will become eligible to register as voters in Hartford, the plaintiffs will be deprived of other political rights.[5] So long as the present system remains in effect the problem is one which is "capable of repetition, yet evading review," as noted in Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969). See Dunn v. Blumstein, 405 U.S. 330, 333, 92 S.Ct. 995, 31 L.Ed.2d 274 n. 2 (1972). The case is not moot.

# III.

Whether a state has the power to impose a six month durational residence requirement on the right of a citizen to vote is no longer an open constitutional question. In Dunn v. Blumstein, *supra,* 405 U.S. at 337, 92 S.Ct. at 1000, the Supreme Court reaffirmed the principle that "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." In testing whether the State of Tennessee had denied newly arrived citizens equal protection by its durational residence requirement, the Court applied the rule that a state must show a compelling interest[6] to justify a restriction on access to the right to vote, 405 U.S. at 330, 331, 92 S.

4a. The defendant Gloria Schaffer, as Secretary of State, administers election laws and thus has duties sufficient to withstand her motion to dismiss.

5. Delegates to the district and state party conventions will be selected, Conn.Gen.Stats. § 9–424, district and state party conventions will be held, Conn.Gen.Stats. § 9–383, nominations of the United States Congressional candidates by petition will be made, Conn.Gen.Stats. § 9–400, 1969 Supp., and if a reapportionment plan is approved, nomination of candidates for the state legislature will be made. See Cummings v. Meskill, 341 F.Supp. 139 (D.Conn.1972). Whether or not the plaintiff Malcolm B. Nicholls, Jr. would be allowed to petition for the nomination of candidates if enrolled as a Hartford elector is not altogether clear. See Conn.Gen.Stats. §§ 9–56 and 9–59; Conn.Gen.Stats. § 9–400, 1969 Supp. In any event, his right to sign such a petition would not render the case moot.

6. Whatever uncertainty there may once have been as to the appropriate standard of review to be applied in testing state voter discrimination statutes, e. g. Oregon v. Mitchell, 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1971), and see Harris v. Samuels, 440 F.2d 748, 751–753 (5th Cir. 1971), has now been dispelled. In Dunn v. Blumstein, *supra,* 405 U.S. at 342, 92 S.Ct. at 1003, the Court said:

"In sum, durational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are '*necessary* to promote a *compelling* governmental interest.' Shapiro v. Thompson, supra, 394 U.S. [618] at 634 [89 S.Ct. 1322, at 1331, 22 L.Ed.2d 600] [emphasis in original]; Kramer v. Union Free School District, supra, 395 U.S. [621] at 627 [89 S.Ct. 1886 at 1889, 23 L.Ed.2d 583]."

Ct. 995, and held that Tennessee's constitutional and statutory requirement of one year's residence in the state and three months in the county before being qualified to vote was an invidious discrimination against new residents in violation of the equal protection clause of the fourteenth amendment.

■ In view of Dunn v. Blumstein, it is frivolous for the defendants to contend that the constitutional and statutory requirements of six months residence in a town as a condition on the right to be admitted as an elector are not unconstitutional. Cf. Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962).

■ The defendants have advanced one argument not discussed in Dunn v. Blumstein. They contend that with respect to new residents who have moved from within the state, there is a compelling state interest in imposing the six month residence requirement in that under Connecticut law towns have the option of conducting local municipal elections in May or November. Conn.Gen. Stats. § 9–164. The defendants assert that the

> "six month residency requirements effectively prevent people from changing their residency from one town to another when the election dates are different and taking part in all of the election processes in the two towns."

This is, of course, quite true; but it does not constitute a valid reason why a bona fide new resident should not be permitted to vote in the municipal elections in the town to which he has recently moved. Furthermore, the argument is constitutionally impermissible. As Mr. Justice Marshall pointed out in Dunn v. Blumstein, *supra* at 342, 92 S. Ct. at 1003: "such laws force a person who wishes to travel and change residences to choose between travel and the

basic right to vote. Cf. United States v. Jackson, 390 U.S. [570] 582–583, [88 S. Ct. 1209, 1216–1217, 20 L.Ed.2d 138] (1968). Absent a compelling state interest, a State may not burden the right to travel in this way."

■ The defendants also assert that "(t)his provision prevents the wholesale importation of voters into a town for one election, caucus or primary who would not maintain their residency once the election has been completed."

This is nothing more than a variation of an argument struck down by the Court in Dunn v. Blumstein. There is a difference between access to the ballot in the first instance and protection against voter fraud and other irregularities in an election. There are less drastic means for preventing such evils than total deprivation of the right of all new residents to vote. The state may vigorously protect the purity of its ballot by administrative safeguards,[7] and its criminal law.

■ Tennessee's constitutional and statutory residence requirements which are not materially different from those of Connecticut were subjected to such a thorough scrutiny and value analysis by the Court in Dunn v. Blumstein that a repetition in this case would be redundant. In a reasoned dictum in the course of its opinion the Court said:

> ". . . (thirty) days appears to be ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud —and a year, or three months, too much." 405 U.S. at 348, 92 S.Ct. at 1006.

Since the plaintiffs resided in Hartford for more than thirty days before instituting this action against its officials, the action has not been prematurely brought.

---

7. See, e. g., Conn.Gen.Stats. § 9–21 which requires an applicant who has moved from another Connecticut town to submit a signed cancellation of his registration as a voter in that town and requires the registrar of voters to mail the cancellation to the applicant's former town registrar within forty-eight hours.

We hold that the six month *durational* residence requirements imposed by the Connecticut Constitution, Art. VI, §§ 1 and 9 and Conn.Gen.Stats. § 9–12 do not comply with the equal protection clause of the fourteenth amendment of the United States Constitution and they are, therefore, invalid.[8]

Enter judgment accordingly.

---

8. We do not deal with the question of how long a town must keep the voter registration list open before an election. See Young v. Gnoss, 7 Cal.3d 18, 101 Cal.Rptr. 533, 496 P.2d 445 (1972).

While a pre-election deadline for becoming registered to vote operates as a durational requirement it applies to old and new residents without discrimination.