Ofelia IBARRA and Jose Pruneda, on behalf of themselves and on behalf of all other persons similarly situated

v.

BEXAR COUNTY HOSPITAL DISTRICT, a Political Subdivision of the State of Texas;

Sam Madrid, Tom Fordyce, Donald T. Hart, Ralph O. Dietert, Craig Johnson, Roy Burley, and Harvey Komet, Individually and in their official capacity as Members of the Bexar County Hospital District;

Warren G. Harding, Individually and in his official capacity as Executive Director, Bexar County Hospital District;

and

George R. Willis, Individually and in his official capacity as Associate Executive Director, Bexar County Hospital District.

Civ. A. No. SA79CA169.

United States District Court,
W. D. Texas,
San Antonio Division.

Dec. 12, 1979.

Enrique Valdez, Stephen G. Cochran, Nancy E. O'Neill, Brendan E. Gill, Bexar County Legal Aid Association, San Antonio, Tex., for plaintiffs.

George H. Spencer, Randolph P. Tower, Clemens, Spencer, Welmaker & Finck, San Antonio, Tex., for defendants.

## ORDER ADOPTING MAGISTRATE'S REPORT AS MODIFIED

SPEARS, District Judge.

Plaintiffs filed this suit seeking to invalidate Bexar County Hospital District's policies concerning the provision of non-emergency medical and hospital care to aliens who are not "legal residents" of the County, as defined by the Defendant Board of Directors of the Hospital District. Plaintiffs contend that the District is required by state and federal law to provide such medical and hospital care to all residents of Bexar County without regard to citizenship.

The Bexar County Hospital District was created in accordance with Article 9, Section 4 of the Texas Constitution and Tex. Rev.Civ.Stat.Ann. art. 4494n § 1. The pertinent part of the Texas Constitution provides that the legislature may authorize the creation of county-wide hospital districts for the purpose of assuming "full responsibility for providing medical and hospital care to needy inhabitants of the county." Article 4494n § 1 provides that any county having a population of 190,000 or more, and Galveston County, may provide for the establishment of a hospital or hospital system to "furnish medical aid and hospital care to the indigent and needy persons residing in [the] hospital district."

The Bexar County Hospital District has a policy of providing *emergency* medical and hospital care (as diagnosed by a hospital physician) to all persons regardless of legal residence or ability to pay. Hospital District policy further provides that persons who are not "legal residents" of Bexar County must fully pay, in advance, for all *non-emergency* medical or hospital care provided. Bexar County Hospital District defines "legal resident" as follows:

a legal resident of Bexar County, for the purpose of receiving medical and hospital care at Bexar County Hospital District facilities, is defined as a citizen either natural born or naturalized, of the United States or a registered alien who was permitted entry with the intent of establishing residency who: (a) is physically present within the geographical boundaries of Bexar County; and (b) has an intent to remain within the County either permanently or for an indefinite period; and (c) actually maintains an abode . . . within the county. A foreign born individual must show proof of his legal status in the United States either through naturalization certificate or immigration and naturalization service form 151. (Registered alien).

Plaintiffs challenge the Hospital District's inquiry into the immigration status of the named plaintiffs. Plaintiffs contend that the Hospital District's definition of "legal resident" is discriminatory, and also that it is underinclusive, in that it creates an irrebuttable presumption that if a person is not a citizen, or in possession of immigration form 151, he is not a legal resident.

The Hospital District maintains that a person who is not a United States citizen or a resident legal alien is not entitled to non-emergency medical treatment on the same basis as persons falling within the district's definition of legal resident (payment for medical services based on ability to pay).

In addition to their individual claims, plaintiffs seek to represent a class comprised of "all Spanish surnamed persons or persons of apparent Mexican ancestry who are low-income or indigent residents of Bexar County, Texas, who have been or will be denied treatment or admission to the Bexar County Hospital District due to the policy established by the Bexar County Hospital District regarding non-emergency medical and/or hospital services to persons who are not legal residents of Bexar County, Texas." Plaintiffs contend that the Hospital District's definition of "legal resident" does not comport with Texas and Federal law.

Plaintiffs seek injunctive and declaratory relief, as well as damages for lost earnings, mental anguish and physical distress. Plaintiffs also seek reasonable attorneys' fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988.

In addition to the requested injunctive relief, plaintiffs seek a declaratory judgment that the Hospital District's policy in question is in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d; the Equal Protection Clause of the United States Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; the Fourteenth Amendment to the United States Constitution; the Supremacy Clause of the United States Constitution; Article 9, Sections 4 and 9 of the Texas Constitution; Article 4494n, § 1, Tex.Rev.Civ.Stat.Ann.; and Article 6252–16, § (a)(6) and (7) of the Texas Civil Rights Act.

This case was referred to the Honorable Joseph F. Leonard, Jr., United States Magistrate, for report and recommendation on plaintiffs' motion for preliminary injunction and defendants' motion to dismiss pursuant to the abstention doctrines. On September 25, 1979, an evidentiary hearing was conducted, after which the magistrate filed his report and recommendations, in which he concluded that the plaintiffs failed to satisfy the prerequisites necessary for the extraordinary relief of a preliminary injunction. He further concluded that the complaint should be dismissed, without prejudice, pursuant to the *Pullman* abstention doctrine.

After considering the pleadings and briefs, the Court is of the opinion that the magistrate's report should be adopted as hereinafter modified, and that the defendants' motion to dismiss, without prejudice, should be granted. Accordingly, the plaintiffs' motion for injunctive relief is denied.

As Magistrate Leonard noted:

The most basic issue underlying all others between the parties is the meaning of the constitutional language assigning "full responsibility for providing medical and hospital care to needy *inhabitants* of the county"; and the statutory requirement "to furnish medical aid and hospital care to the indigent and needy *persons residing* in said hospital district."

After the evidentiary hearing, the magistrate entered the following findings of fact:

(1) Plaintiff Ofelia Ibarra is a 44 year old female residing in Bexar County. She and her family have lived here for four years. Mrs. Ibarra and her husband are natives and citizens of the Republic of Mexico and are not authorized to reside in the United States and have not been certified as registered aliens.

(2) Mrs. Ibarra sought admission to the Robert B. Green Hospital in order to undergo surgery for removal of gallstones. Since she did not come within the District's definition of legal resident, she was denied admission because a hospital physician determined that her condition was not an emergency, and she could not fully pay for the cost of the surgery in advance.

(3) Plaintiff Jose Pruneda is a 28 year old citizen of the Republic of Mexico who has lived in San Antonio since 1972. In the summer of 1978, he went to the

Robert B. Green Hospital and it was determined that he had a hernia. Mr. Pruneda was denied admission to the hospital for the same reasons as Mrs. Ibarra.

(4) Neither plaintiff pays taxes directly to the Hospital District, although both indirectly do so, through rental payments.

## APPLICATION OF THE ABSTENTION DOCTRINES:

Magistrate Leonard concluded that this case presents a "textbook" case for abstention pursuant to the doctrine first articulated in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). A form of judicial restraint, the doctrine was designed to promote and preserve the delicate balance between the state and federal courts. The constitutional issues in this case concern "a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941). As in *Pullman*, "such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy." *Id.*

■ A federal court should not order abstention in every case in which "the law is uncertain or difficult to determine," *Meredith v. Winter Haven*, 320 U.S. 228, 236, 64 S.Ct. 7, 12, 88 L.Ed. 9 (1943), but only in "narrowly limited special circumstances." *Zwickler v. Koota*, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967). As the Court of Appeals for the Fifth Circuit has noted, "decision of unsettled state law by the state courts in the first instance 'is especially desirable where the questions of state law are enmeshed with federal questions', . . . unless the state statute is clear and unambiguous in all respects and does not render decision of the constitutional question unnecessary." *Romero v. Coldwell*, 455 F.2d 1163, 1166 (5th Cir. 1972).

Plaintiffs, however, contend that the state law is clear and unambiguous. They contend that the constitutional and statutory provisions "mean just what they say", and that the language used could hardly be more clear.

Defendants, on the other hand, argue that it was never the intent of the constitutional and statutory provisions to require the hospital districts of the State of Texas to provide non-emergency medical care to "illegal aliens", who happen to be within the geographical boundaries of the District, on the same basis as legal residents. Defendants contend that the meaning of the constitutional and statutory provisions in point is unclear.

■ The Court is of the opinion that the meaning of the terms "inhabitants" and "persons residing in" are sufficiently ambiguous to warrant abstention in the case *sub judice.* Many courts have held that the word "inhabitant" is synonymous with "resident" and "citizen", *see Words and Phrases*, and one court has referred to the term "residence" as "a single term of broad and ill-defined content having no exact legal meaning." *United States v. Stabler*, 169 F.2d 995, 998 (3rd Cir. 1948). In addition, the phrase "residence" has been construed to mean legal residence or domicile. *Mauro v. Dept. of Mental Hygiene*, 24 Cal.Rptr. 505, 508, 207 Cal.App.2d 381 (Ct.App.1962). *See generally* Reese and Green, *That Elusive Word, "Residence"*, 6 Vand.L.Rev. 560.

This Court intimates no opinion on the correctness of these definitions, but cites them only to demonstrate that defendants' interpretation of the language used in the Texas Constitution and Statutes is not indefensible. At the same time, the Court is mindful of the Supreme Court's admonition that abstention is inappropriate when the relevant state constitutional and statutory provisions are clear and unambiguous. *Davis v. Mann*, 377 U.S. 678, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964); *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); *Examining Board v. Flores de Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976). However, in the instant case, clarity and unambiguity as to the ef-

fect and purpose of the state constitutional and statutory provisions is lacking. Rather, the instant case falls exactly within the Supreme Court's pronouncement that "abstention is appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary 'which might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem.'" *Bellotti v. Baird*, 428 U.S. 132, 147, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976).

In *Boehning v. Indiana State Employees Ass'n Inc.*, 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975), a dismissed employee of the Indiana State Highway Commission brought a federal civil rights suit, claiming that she was denied her right to a pretermination hearing. "The District Court held that the controlling state statutes, as yet unconstrued by the state courts, might require the hearing demanded by (the employee) and so obviate decision on the constitutional issue." *Id.* 423 U.S. 6, 7, 96 S.Ct. 168, 169, 46 L.Ed.2d 148. The District Court abstained until construction of the Indiana statutes had been sought in the state courts. The Supreme Court affirmed the decision of the district court, holding that ". . . the relevant statutory provisions may fairly be read to extend such hearing rights to (the discharged employee)." *Id.* 423 U.S. 6, 8, 96 S.Ct. 168, 169, 46 L.Ed.2d 148. Similarly, in the instant case the state courts may determine that the controlling state constitutional and statutory provisions afford plaintiffs the very rights they seek to establish by this lawsuit.

In this case, a state court determination that plaintiffs are entitled to the relief they seek would obviate the necessity for federal adjudication of the federal constitutional and statutory issues raised by plaintiffs. If plaintiffs do not prevail in the state courts, their constitutional claims would be preserved for review by this Court.

Plaintiffs also argue that abstention is inappropriate because they have plead a substantial federal claim which is supplementary to any claim plaintiffs may have

under state law. The case of *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), is cited for the proposition that "relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy . . ." It appears that plaintiffs have confused the abstention doctrine with doctrines which require exhaustion of state remedies. As a three judge district court recently noted:

> It must be recognized that abstention and exhaustion of state remedies are distinct doctrines serving different purposes. Exhaustion of state remedies is required in certain classes of cases in order to give the state courts as a matter of comity the opportunity to make the initial determination as to all claims, federal or state, raised in those cases. (citing cases) *Pullman* abstention, on the other hand, is required not simply because a state remedy is available, but because there is an uncertain question of state law which the state courts are better able to resolve and which may make a constitutional adjudication unnecessary.

*United States v. State of Texas*, 430 F.Supp. 920 (S.D.Tex.1977).

Plaintiffs contend that the necessity of adjudicating the constitutional issue might be obviated by a decision in their favor on their claim that the Hospital District has violated Title VI of the Civil Rights Act. However, the Supreme Court and the Court of Appeals for the Fifth Circuit have "confirmed that traditional abstention principles apply to civil rights cases." *Romero v. Coldwell*, 455 F.2d 1163, 1167 (5th Cir. 1972). *See also Boehning v. Indiana State Employees Ass'n Inc.*, 423 U.S. 6, 96 S.Ct. 168, 46 L.Ed.2d 148 (1975); *Askew v. Hargrave*, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971).

Another consideration which supports application of the abstention doctrine in this case is the nature of the issues involved, i. e. health care and undocumented aliens' use of tax supported facilities in Texas. The quality of health care is, of course, extremely important to local and state governments. In addition, the problem of dealing with

illegal aliens, which admittedly is an issue of nation-wide concern, is exacerbated in Texas due to its close proximity to the Republic of Mexico. When confronted with delicate issues involving state and local governments, a federal court "should be slow to intervene, but should instead avoid needless conflict with the administration by the State of its own affairs." *Harris v. Samuels*, 440 F.2d 748, 752 (5th Cir. 1971).

Ordinarily, when abstention is ordered, the case is retained on the federal court's docket pending resolution of the state issues. However, the Texas Supreme Court has ruled that it cannot grant declaratory relief under state law if the federal court retains jurisdiction over the federal claims. *United Services Life Insurance Co. v. Delaney*, 396 S.W.2d 855 (1965). Thus, in order to allow plaintiffs to proceed in the Texas Courts, the instant case will be dismissed without prejudice. *See Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 88 n.14, 95 S.Ct. 870, 878, 43 L.Ed.2d 32 (1975); *Romero v. Coldwell*, 455 F.2d 1163 (5th Cir. 1972).

In conclusion, it is the opinion of the Court that the requisite "special circumstances" exist in this case to warrant invocation of the *Pullman* abstention doctrine. It is, therefore,

ORDERED that defendants' motion to dismiss, without prejudice, is GRANTED.