**C. R. DOLLINGER et al., Plaintiffs,**

v.

**JEFFERSON COUNTY COMMISSIONERS COURT et al., Defendants.**

**Civ. A. No. 7460.**

United States District Court, E. D. Texas, Beaumont Division.

Dec. 10, 1971.

3. Ex P–1.

Alan McNeill, Beaumont, Tex., for plaintiffs.

Leonard J. Giblin, Jr., First Asst. Crim. Dist. Atty., Beaumont, Tex., for defendants.

W. O. Shultz, II, Asst. Atty. Gen., Austin, Tex., for intervenor—State of Texas.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

The Plaintiffs complain of an order of September 27, 1971 issued by the County Commissioners Court of Jefferson County, Texas, which failed to provide for an election in 1972 for Precincts Nos. 2 and 4 to implement the realignment of the four county precincts, which precincts now conform to the constitutional one man, one vote requirements of Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964) and Avery v. Midland County, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968).[1]

1. *Avery* was the logical product of recent decisions which gave federal courts the power to review election processes to insure a properly weighted electorate. These decisions stem from Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) and Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 1384, 12 L.Ed. 2d 506 (1964). *Reynolds* states in part "to the extent that a citizen's right to vote is debased, he is that much less a citizen. The fact that an individual lives here or there is not a legitimate reason for overweighting or diluting the efficacy of his vote." 377 U.S. at 567, 84 S.Ct. at 1384.

The Plaintiffs do not question the validity of the present apportionment of Jefferson County, resulting from the realignment of the commissioners' precincts; [2] neither is there any controversy concerning the constitutionality of Article XVI, Section 65, and Article V, Section 18, of the Texas Constitution, Vernon's Ann.St. which requires that commissioners be elected for staggered terms of four years,[3] and the parties have stipulated that under the Texas law no election for Precincts 2 and 4 is scheduled until 1974, the last such election being in 1970. The Plaintiffs assert that some 44,973 persons transferred to Precincts 2 and 4, who would have voted in 1972 but for the reapportionment, are being deprived of their vote in violation of due process and equal protection guaranteed to them by the Federal Constitution.

The question, therefore, presented for our decision is whether or not under the facts and circumstances this Court has a right to require an election to implement the Commissioners Court order of September 27, 1971.

Precinct 2 has 35,515 persons now residing in said precinct who were residents of either Precinct 3 or Precinct 4, 24,621 of these new persons transferred from Precinct 3, and they would be entitled to vote in 1972 if they had remained within the boundaries of Precinct 3. 10,894 of the new residents of Precinct 2 transferred from Precinct 4 and they would not have been entitled to

vote in 1972 but instead were scheduled to vote in 1974. Before reapportionment Precinct 2 had 51,911 persons as compared to the present apportionment of 60,176 persons. In the realignment by the Commissioners Court, 27,250 persons were transferred from Precinct 2 to Precinct 3, leaving remaining 24,661 persons in Precinct 2, and this figure added to 35,515 gives the total of 60,176 persons now residing in Precinct 2. Thus we find that more than 50% of the people presently residing in Precinct 2 have not had the opportunity to vote for the Commissioner now serving in office.

Now turning to the statistics affecting Precinct 4. In the realignment 9,458 persons were moved from Precinct 1 to Precinct 4, and these people would be entitled to vote in the 1972 elections if they had remained in Precinct 1. Before the reapportionment order of September 27, 1971, Precinct 4 had 64,015 persons as compared to the present apportionment of 62,579 persons. In the realignment 10,894 persons were transferred from Precinct 4 to Precinct 2, leaving remaining 53,121 persons in Precinct 4, and this figure added to 9,458 persons transferred to Precinct 4 from Precinct 1 results in 62,579 persons now residing in Precinct 4, with Precinct 4 retaining 53,121 of its original residents. We find that more than 85% of the people now residing in Precinct 4 had the opportunity in the elections of 1970 to vote for the Commissioner now in office and who will serve under the

2. Precinct 1 now has 61,940 persons; Precinct 2 has 60,176; Precinct 3 has 61,678; and Precinct 4 has 62,579.

3. Article XVI, Section 65 of the Texas Constitution reads: "The following officers elected at the General Election in November, 1954, and thereafter, shall serve for the full terms provided in this Constitution: . . . (i) County Commissioners for Precincts Two and Four."

Article V, Section 18 of the Texas Constitution reads: "Each organized county in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four and not more

than eight. Divisions shall be made by the Commissioners Court provided for by the Constitution. . . . Each county shall in like manner be divided into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner, who shall hold his office for four years and until his successor shall be elected and qualified. The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State . . . ."

Texas law providing for staggered terms until his term expires in January 1, 1975.

Under the facts recited, we hold that Plaintiffs have not been denied the right to vote for their Commissioner but that they merely have been required to adopt a different schedule for voting, that is, instead of voting for their Commissioner in 1972 while residents of Precincts 1 and 3, they will vote for their Commissioner in 1974 because they are now residents of Precincts 2 and 4, this change in the schedule of voting being necessary in order to comply with the one man, one vote rule. Section 65 of Article XVI of the Texas Constitution, providing for the staggered principle of electing county commissioners, was held constitutional in Pate v. El Paso County, Texas, 324 F.Supp. 935 (W.D.Tex.1971) at page 938:

> "Under the provisions of this section [Section 65 of Article XVI, Texas Constitution], in all counties of this State, the County Commissioners of Precincts Two and Four are to be elected in 1970 and the County Commissioners of Precincts One and Three will be elected in 1972. Thus there are established two classifications of voters insofar as the time at which they are entitled to vote is concerned."

Nevertheless, since the Fourteenth Amendment constitutional rights of the voters are in issue, we cannot summarily dismiss the Plaintiffs' contention that an election should be ordered for Precincts 2 and 4 in 1972, and we must go further.

■ The application of Article XV, Section 65, and of Article V, Section 18 of the Texas Constitution must be analyzed in each instance to insure that there is no need for federal protection of Fourteenth Amendment rights, which necessarily compels an order to override specific provisions of state law. In fashioning remedies to cure malapportioned districts, federal courts are empowered to call elections if the circumstances so warrant. See e. g., Fain v. Caddo Parish Police Jury, 312 F.Supp. 54 (W.D.La.1970); Scott v. Lack, 332 F. Supp. 220 (E.D.Tex.1971); and, Phelps v. Newton County, Civ. No. 7434 (E.D. Tex.1971).[4]

■ Taylor v. Monroe County Board of Supervisors, 421 F.2d 1038 (5th Cir. 1970), a Mississippi redistricting case, provided for realignment but denied a request for an election. Judge Tuttle, writing the opinion for the Court, remanded the case to the District Court for consideration of all the equities involved to determine whether or not an election should be called to determine if the aggrieved parties had received due process and equal protection. Herein lies the function of the court and the burden of the Plaintiffs to obtain reapportionment and an election requires a positive showing of circumstances favorable to that position; otherwise a federal court would not be justified in ordering an election.

■ We believe the equities favor ordering an election for Precinct 2 in that less than 50% of the residents of this precinct have had an opportunity to express a choice in regard to their elected precinct official, and, therefore, the office of Commissioner of Precinct 2 is declared vacant effective January 1, 1973, and such vacancy shall be filled by elections in 1972 consistent with the regular electoral process for both primaries and general election; the County Commissioner for Precinct 2 to be elected for two years only in the elections of 1972. Thereafter, the term of office is to be for four years in accordance with

4. Both *Scott* and *Phelps* are examples of cases in which the population distributions were divided on such a geographic basis that extreme malapportionment had resulted.

the Texas Constitution, Section 18, Article V.

Further, we believe the equities involved in Precinct 4 do not favor ordering an election since less than 15% of the residents of Precinct 4 can be said to have been denied a choice in the selection of their elected commissioner. This change resulting from realignment can hardly be said to be substantial. Therefore, no election in 1972 will be ordered for Precinct 4 and said regular elections for Precinct 4 will be held as scheduled in 1974.

■ It is anticipated that from time to time realignment of commissioners precincts will become necessary as the county population shifts in order to comply with the one man, one vote rule which will necessitate an exchange of voters between the two classifications established by Section 65, Article XVI; and when reapportionment orders are entered by the Commissioners Court, it does not follow as a matter of right that the voters transferred from one precinct to another precinct are entitled to vote at the next regular election unless they reside within the Commissioners' precincts in which such elections are being held. The Commissioners Court has no authority to call elections in any manner other than that provided by the Texas law, and the Federal Courts' authority to order such an election must clearly be based on facts and circumstances which, by a proper balancing of the equities, clearly discloses a denial of due process and equal protection for the particular class of aggrieved voters.

The Commissioners Court of Jefferson County, being justified in refusing to call an election in 1972 for Precincts 2 and 4 and acting properly within their statutory authority, the Plaintiffs' request for attorney's fees is denied. Costs will be divided equally between Plaintiffs and Defendants. Judgment will be entered according to the findings and conclusions contained in this Memorandum Opinion.