**Lloyd J. CARR, Jr., et al., Plaintiffs,**

v.

**BRAZORIA COUNTY, TEXAS, et al.,
Defendants.**

**Civ. A. No. 71-G-210.**

United States District Court,
S. D. Texas,
Galveston Division.

Feb. 5, 1972.

———◆———

Davis & Kee, Angleton, Tex., Butler, Binion, Rice, Cook & Knapp, and John L. McConn, Jr., Houston, Tex., for plaintiffs.

Ogden Bass, Crim. Dist. Atty., and R. L. McElyea, Asst. Crim. Dist. Atty., Brazoria County, Tex., for defendants.

Crawford C. Martin, Atty. Gen., and W. O. Shultz, II, Asst. Atty. Gen., Aus-

**156**

tin, Tex., for intervenor, The State of Texas.

David C. Bonnen, Angleton, Tex., amicus curiae.

## MEMORANDUM AND ORDER

NOEL, District Judge.

### I. *Preface*

This is a class action brought by several residents of Brazoria County, Texas, against the county, its commissioners court, its four county commissioners, and its county judge. Plaintiffs sue in behalf of the qualified voters of commissioners precincts #2 and #4 of Brazoria County, and complain that defendants' administration of the State's election laws is operating to deny them equal protection of the laws and due process of law in violation of the Fourteenth Amendment to the Federal Constitution. Jurisdiction is predicated upon 28 U.S.C. § 1343(3).

The alleged deprivation arises from the apparently successful effort of defendants to conform to the one-man-one-vote principle announced in Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), and held applicable to county governments in Avery v. Midland County, Texas, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968). In obedience to this constitutional command, defendant commissioners, by order and resolution of August 31, 1970, revised the borders of the commissioner precincts to encompass substantially equal population groups. This redistricting became effective January 1, 1971, and its result was as follows:

precinct #1 contains 27,318 persons; precinct #2 contains 26,230 persons; precinct #3 contains 26,885 persons; and precinct #4 contains 25,797 persons.

Plaintiffs concede that this apportionment produced commissioners precincts of substantially equal population in conformity with *Avery*. No challenge is raised against this apportionment as a substantive result, nor is it contended that the division of population is gerrymandered or otherwise invidiously discriminatory in result. The only complaint is that the commissioners court, acting in good faith, conducted the mechanics of this redistricting in such a manner as to deprive certain persons of the right to vote for commissioners in the 1972 party primaries and general election, when such persons would have enjoyed this right had the redistricting not occurred.

To effectuate the redistricting in adherence to the constitutional arithmetic of *Avery*, it was necessary to transfer a number of persons from precincts #1 and #3 to precincts #2 and #4. This was done by altering the precinct boundary lines. The effect was to add 18,130 persons ("transferees") to precinct #2, so that 68% of the persons in that precinct were included therein as a result of the redistricting. In precinct #4, 11,748 persons were added, and they now constitute 42% of the persons residing in that precinct. In view of the requirement of Article XVI, Section 65 of the Constitution of Texas, Vernon's Ann.Tex. St., that commissioner terms be staggered,[1] the incumbent commissioners for

1. Texas Const. art. XVI, § 65 provides:
   Sec. 65. Staggering Terms of Office —The following officers elected at the General Election in November, 1954, and thereafter, shall serve for the full terms provided in this Constitution:
   (i) County Commissioners for Precincts Two and Four; . . . . Notwithstanding other provisions of this Constitution, the following officers elected at the General Election in November, 1954, shall serve only for terms of two (2) years; . . . . 
   (f) County Commissioners for Precincts One and Three. . . . At

subsequent elections, such officers shall be elected for the full terms provided in this Constitution.
Texas Const. art. V, § 18 provides:
   Sec. 18. Each organized county in the State now or hereafter existing, shall be divided from time to time, for the convenience of the people, into precincts, not less than four and not more than eight. Divisions shall be made by the Commissioners Court provided for by this Constitution. . . . Each county shall in like manner be divided into four commissioners pre-

precincts #2 and #4 were elected in the general elections of 1970 and will not again stand for election until 1974. Therefore, by reason of having been transferred to precincts #2 and #4, these former residents of precincts #1 and #3, who would otherwise have been entitled to vote in the 1972 commissioner elections, must now wait until 1974 to exercise their franchise.

Perhaps foreseeing this problem, the Texas Legislature has by statute provided a device which might arguably alleviate the hardship. Tex.Rev.Civ.Stat.Ann. art. 2351½(a) provides:

> (a) Whenever the Commissioners Court changes the boundaries of commissioners precincts or of justice precincts, it may specify in its order a future date, not later than the first day of January following the next general election, on which the changes shall become effective. If an election for any precinct office is held before the effective date of the order, the office shall be filled at the election by the voters of the precinct as it will exist on the effective date of the change in boundaries. A person who has resided within the territory embraced in the new boundaries for the length of time required to be eligible to hold the office shall not be rendered ineligible by virtue of the precinct's not having been in existence for that length of time.

Since the 1970 general election fell between the August 31, 1970 redistricting order and its January 1, 1971 effective date, this statute would appear to have authorized the defendants to conduct the election so that the proposed transferees from precincts #1 and #3 might have voted for commissioners for new precincts #2 and #4. This, of course, would have obviated the present controversy.

For reasons apparently sufficient to defendants, the procedure established by Article 2351½(a) was not implemented. This is the gravamen of the instant complaint, as plaintiffs assert in their petition that this omission on the part of defendants "arbitrarily and unnecessarily denied the plaintiffs and the class which plaintiffs represent in this action their right to vote for their county commissioners," in violation of the Fourteenth Amendment to the Federal Constitution. To remedy the alleged deprivation, it is urged that this Court order commissioners places #2 and #4 to be vacant and subject to election in 1972, along with places #1 and #3.[2] Functionally,

---

cincts in each of which there shall be elected by the qualified voters thereof one County Commissioner, who shall hold his office for four years and until his successor shall be elected and qualified. The County Commissioners so chosen, with the County Judge as presiding officer, shall compose the County Commissioners Court, which shall exercise such powers and jurisdiction over all county business, as is conferred by this Constitution and the laws of the State, or as may be hereafter prescribed.

2. Plaintiffs rely strongly on three cases from the Eastern District of Texas in which relief similar to that requested was granted. Scott v. Lack, 332 F.Supp. 220 (E.D.Tex.1971); Phelps v. Newton County Commissioners Court, et al, C.A. No. 7434 (E.D.Tex., Oct. 29, 1971); Dollinger v. Jefferson County Commissioners Court, 335 F.Supp. 340 (E.D. Tex., Dec. 10, 1971). None of these cases was appealed. The result in *Scott*

was explained only because the opposite result would have been "grossly unfair"; the *Phelps* holding was also based upon the Court's desire to avoid "gross unfairness"; the *Dollinger* decision was elucidated primarily in terms of the "equities". None of these cases are deemed persuasive, for in none of them does the reasoning support the result. More specifically, in none of them did the Court explain the holding in terms of constitutional imperative. Such an explanation was necessary to support the decisions, for *federal courts derive the power to rearrange state elections only when the Constitution requires it, and not because of "fairness" or the "equities"*. Accordingly, this Court must adhere to Pate v. El Paso County, 337 F.Supp. 95 (W.D.Tex.1970), aff'd 400 U.S. 806, 91 S.Ct. 55, 27 L.Ed.2d 38 (1970), a decision of a three-judge district court in which the constitutional issue was confronted and which was affirmed on appeal by the United States Supreme Court.

of course, this would be the equivalent of an order removing the affected county commissioners from office two years prior to the legal expiration of their terms.[3] The State of Texas has intervened as a party defendant and has appeared by its Attorney General.[4]

## II. *The Three Judge Statutory Court Issue*

The threshold issue presented is whether this Court must notify the Chief Judge of this Circuit for the purpose of convening a three-judge district court pursuant to 28 U.S.C. §§ 2281, 2284. De-

fendants contend that this is a three-judge court case because it necessarily implicates the constitutionality of the Texas scheme for staggered elections. In response, plaintiffs have vigorously urged in oral argument and briefs that this is not such a case.

■ Defendants' contention is without merit. It is clear from the amended complaint, oral argument, and briefs, that plaintiffs do not challenge the federal constitutionality of the Texas election laws. They merely challenge the constitutionality of an action of a local body in applying those laws,[5] and it is well settled

---

3. The Texas election laws make no provision for such a result. To the contrary, these laws provide that incumbent Commissioners shall complete their terms notwithstanding a change in precinct boundaries. Tex.Rev.Civ.Stat.Ann. art. 2351½(b) provides:

> (b) When boundaries of commissioners precincts are changed, the terms of office of the commissioners then in office shall not be affected by such change, and each commmissioner shall be entitled to serve for the remainder of the term to which he was elected even though the change in boundaries may have placed his residence. outside of the precinct for which he was elected.

Similarly, redistricting does not appear to be among those occurrences which might occasion the removal of a county commissioner from office. Tex.Const. art. 5, § 24 provides:

> Sec. 24. *County Judges, county attorneys,* clerks of the District and County Courts, justices of the peace, constables, and other county officers, may be removed by the Judges of the District Courts for incompetency, official misconduct, habitual drunkenness, or other causes defined by law, upon the cause therefor being set forth in writing and the finding of its truth by a jury.

Finally, state law provides for the filling of vacancies on the commissioners court by the county judge, who "shall appoint some suitable person living in the precinct where such vacancy occurs, to serve as commissioner for such precinct until the next general election." Tex.Rev.Civ.Stat.Ann. art. 2341.

4. David C. Bonnen, Esq., counsel for the Brazoria County League of Women Voters, has been allowed to file an

amicus curiae brief on plaintiffs' behalf, and the Court has had the benefit of oral argument by counsel for the League. The League's motion for leave to intervene was denied. As the League's position was well represented by the existing parties, there was clearly no absolute right to intervene under Rule 24 (a) (2), Fed.R.Civ.P. Atlantis Development Corp. v. United States, 379 F.2d 818 (5th Cir. 1967). Permissive intervention under Rule 24(b), Fed.R.Civ.P. was likewise denied. Under the circumstances of this case, involving an issue of law with no disputed factual questions, the League's presence as an amicus accomplished as much as an intervention. Furthermore, as the Court's decree in this class action will necessarily affect all citizens of precincts #2 and #4 equally, the League's status as a party *vel non* is of little operative significance. Cf. Horton v. Lawrence County Board of Education, 425 F.2d 735 (5th Cir. 1970). Finally, the Court's exercise of discretion in denying the permissive intervention was actuated by substantial doubt as to the League's standing. Cf. Wisconsin State Employees Association etc. v. Wisconsin Natural Resources Board, 298 F.Supp. 339 (W.D.Wis.1969).

5. In their amended complaint, plaintiffs allege that:

> As alleged in paragraph V above, the redistricting order by the Commissioners' Court of Brazoria County, Texas, was dated August 31, 1970, and became effective January 1, 1971. The County Commissioners of Brazoria County, however, ignored the plain provisions of Article 2351½(a) and did not allow the persons transferred into Commissioners' Precincts 2 and 4 to vote in the General Election in

that this will not support the convocation of a three-judge court. As the Supreme Court stated in Ex Parte Bransford, 310 U.S. 354, 361, 60 S.Ct. 947, 951, 84 L.Ed. 1249 (1940):

> It is necessary to distinguish between a petition for injunction on the ground of the unconstitutionality of a statute as applied, which requires a three-judge court, and a petition which seeks an injunction on the ground of the unconstitutionality of the result obtained by the use of a statute which is not attacked as unconstitutional. The latter petition does not require a three-judge court. In such a case the attack is aimed at an allegedly erroneous administrative action.

Cf. Dyer v. Rich, 259 F.Supp. 736 (N.D. Miss.1966); Pervis v. LaMarque Independent School District, 328 F.Supp. 638 (S.D.Tex.1971). It follows that this is not a three-judge court case. Accordingly, this Court must decline to notify the Chief Judge of this Circuit for the purpose of convening a three-judge district court.

### III. *Absence of a Federal Constitutional Deprivation*

In this one-judge district court case, a trial has now been had, the facts summarized above have now been established by the evidence, the case has been fully briefed, the arguments of counsel heard, and the facts, briefs and arguments have been carefully considered by the Court. All defendants have filed answers and additionally, defendants at trial moved to dismiss plaintiffs' complaint. The case is ripe for decision. The lodestar by which our inquiry must be guided is Pate v. El Paso County, 337 F.Supp. 95 (W.D.Tex.

1970), aff'd 400 U.S. 806, 91 S.Ct. 55, 27 L.Ed.2d 38 (1970).

In *Pate,* the plaintiffs sued to compel the commissioners court of El Paso County, Texas, to redraw its precincts in accordance with *Avery.* This was done, and the three-judge district court ordered the redistricting plan to be implemented. However, plaintiffs also alleged that in the realignment of the precincts those voters who were shifted from precinct #2 to precincts #1 and #3 would be unconstitutionally deprived of their vote in the 1970 elections, due to the Texas constitutional provision requiring staggered terms. In practical effect, this is precisely the deprivation complained of in the instant case. The Court found no merit in this argument and concluded that "(s)ection 65 of Article XVI, neither upon its face *or as applied in the instant case,* effectuates an unconstitutional denial of the right to vote." 337 F.Supp. at 96 (emphasis added). Despite the fact that its effect was to postpone the vote of certain "transferees" for a period of two years, the staggering provision was held to be a reasonable and non-discriminatory mechanism calculated to assure continuity of membership and experience on the commissioners court, "thereby providing for more efficient and effective county government." 337 F. Supp. at 98.

Plaintiffs at bar would seek to distinguish *Pate* because that case was tried on the theory of a constitutional attack upon the state electoral laws providing for staggered terms, whereas the thrust of the instant complaint is the asserted unconstitutional omission of defendants in having failed to effectuate Article 2351½(a). With attention to the

---

November, 1970. The officers in Brazoria County, Texas, therefore arbitrarily and unnecessarily denied the plaintiffs and the class which plaintiffs represent in this action their right to vote for their county commissioners.

And in their supplemental brief prepared at the request of the Court at oral argument and filed January 31, 1972, plaintiffs argue:

> . . . . . Plaintiffs do not here attack the validity of a state statute or constitutional provision. (at p. 6)
> . . . . . In our case, the statutes involved are clear, straight forward and unambiguous, as well as not subjected to constitutional attack here by Plaintiffs. (at p. 8)

federal constitutionality of the result achieved, the Court concludes that this is a difference rather than a distinction. *Pate* controls the critical point.

■ We start from the indisputable premise that this Court cannot grant the relief requested simply because defendants may have failed to comply with a state statute. Whether or not defendants' supervision of the 1970 election violated Article 2351½(a) is an issue which is not before this Court, as it presents only a question of state statutory interpretation. Litigation of that issue might well have produced all the relief sought had it been timely pursued in a state court, but plaintiffs chose not to adopt that course. Instead, they chose to come to this federal court, and in so doing the issue and the burden are altered considerably. It is no longer enough for plaintiffs to argue that defendants' action was impermissible under the state statute; rather, plaintiffs must establish that the action or non-action of the commissioners produced a result which violated the Federal Constitution. What was this result? Clearly, it was to cause certain transferred voters to suffer a two-year postponement of the franchise. Therefore, the precise question presented is whether this postponement amounts to a constitutional deprivation. As a source of law to resolve this issue, we need look no further than a recently decided case squarely in point. The question is plainly and unambiguously answered by *Pate,* wherein the identical postponement was approved as constitutionally valid. Therefore, the substance of plaintiffs' theory is without merit and the action must be dismissed.

## IV. *Judicial Abstention*

To avoid the foregoing disposition, plaintiffs by amendment injected the theory that the unconstitutionality of defendants' action derives solely from their violation of a state statute. It is true that the effect of Article 2351½(a) was not discussed by the *Pate* court, and the issue was apparently not raised. The only thing of which we can be sure is that the El Paso County Commissioners whose actions were scrutinized in *Pate,* like the defendants in the instant case, did not implement the procedure supposedly provided by Article 2351½(a). This Court cannot perceive how the result which was approved as constitutional in *Pate,* where Article 2351½(a) was apparently ignored, can now become unconstitutional because Article 2351½(a) has allegedly been "violated". Such would appear, however, to be plaintiffs' position, for it is stated in the amended complaint that "(t)here is no compelling state interest which would justify a continued denial of the right to vote of Plaintiffs and the class they represent which was provided by said Article 2351½ and which was denied contrary to the Fourteenth Amendment." In an understandable effort to avoid the impact of *Pate,* it would appear that plaintiffs in their amended complaint argue, in effect, that defendants violated Article 2351½(a) and thereby automatically violated the Fourteenth Amendment.

With the gravamen of the amended complaint thus posed, plaintiffs invite this Court to construe for the first time a relatively obscure state election law and to find in its violation a breach of the Federal Constitution. The federal constitutional issue is therefore entirely contingent upon the state question, and might be substantially altered or even completely avoided depending upon the resolution of the state issue. For example, if a state court were to determine that the statute were either void or inapplicable, plaintiff would be left with only the pure federal constitutional contention relating to the validity *per se* of vote postponement as an incident of staggering, and this issue has been foreclosed by *Pate.* On the other hand, if a state court should determine that the defendant commissioners have indeed violated Article 2351½(a), then adequate relief might be fashioned without necessity for reaching the federal constitutional question. Stated simply, a prior adjudication

of the state statutory question would either clarify the constitutional issue or wash it out.

It is without enthusiasm that this Court would venture a construction of Article 2351½(a). First, the provision is not clear on its face, for its ambiguous reference to "precinct office" raises considerable doubt whether county commissioners are within its intendment. Second, the provision must be considered in pari materia with a plethora of other state election laws, some of which would appear to be at least partially inconsistent. For example, Articles 2.02 and 2.04 of the Texas Election Code, insofar as they contemplate that newly drawn voting precincts shall not become operative in the holding of elections until the beginning of the following voting year, are arguably in conflict with the Article 2351½(a) procedure. Third, portions of Article 2351½ have twice been deemed void under the State Constitution in advisory opinions of the Attorney General of Texas. See Op.Atty.Gen.No. M–68 (May, 1967); Op.Atty.Gen. No. M–562 (January, 1970). Finally, although the statute has been on the books since 1965, this Court is not aware that Article 2351½(a) has ever been authoritatively construed in any reported opinion of any Texas court.

Confronted with a similarly clouded situation approximately thirty years ago, the United States Supreme Court held that a federal district court should stay its hand pending a clarification of the state issues upon which the federal constitutional issue hangs. In Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), a state regulatory agency promulgated a rule relating to the crewing of Pullman cars on railroad trains operating in Texas. The defendant company and certain of its employees persuaded a three-judge federal district court to enjoin the order, arguing, as in the instant case, that the state action was unauthorized by Texas law as well as violative of the Federal Constitution. In reversing, a unanimous Court spoke through Mr. Justice Frankfurter in language which might have been written for the instant case:

> The complaint of the Pullman porters undoubtedly tendered a substantial constitutional issue. It is more than substantial. It touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open. Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy. It is therefore our duty to turn to a consideration of questions under Texas law.
>
> . . . . Reading the Texas statutes and the Texas decisions as outsiders without special competence in Texas law, we would have little confidence in our independent judgment regarding the application of that law to the present situation. . . . . The last word on the meaning of Article 6445 of the Texas Civil Statutes, and therefore the last word on the statutory authority of the Railroad Commission in this case, belongs neither to us nor to the district court but to the Supreme Court of Texas. In this situation a federal court of equity is asked to decide an issue by making a tentative answer which may be displaced tomorrow by a state adjudication. . . . The reign of law is hardly promoted if an unnecessary ruling of a federal court is thus supplanted by a controlling decision of a state court. *The resources of equity are equal to an adjustment that will avoid the waste of a tentative decision as well as the friction of a premature constitutional adjudication.* (Emphasis added).

312 U.S. at 499–500, 61 S.Ct. at 644.

The abstention doctrine as formulated in *Pullman* has since been followed repeatedly and with substantial unanimity. As one commentator has observed, "the abstentation doctrine has been applied, where federal constitutional questions are intermingled with questions of state law, in many cases, and the Court has been

virtually unanimous in this application of the doctrine." 1 Barron & Holtzoff, Federal Practice & Procedure § 64 at 341 (Wright ed. 1960). Application of the doctrine is particularly fitting where, as in the instant case, the intermingled state question is "uncertain" and is fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question. Compare Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); cf. Barrett v. Atlantic Richfield Company, 444 F.2d 38 (5th Cir. 1971).

In what has recently been described as a "rejuvenation" of the abstention doctrine, cf. Reid v. Board of Education, 453 F.2d 238 (2nd Cir., 1971, opinion written by the very scholarly Judge Irving R. Kaufman), *the Supreme Court has admonished the lower federal courts to be increasingly reluctant to reach out for federal constitutional questions when a preemptive state adjudication is feasible.* Such a posture reflects nothing more than a sound recognition that constitutional scrutiny of state action is too serious a business to be commenced "on the basis of preliminary guesses regarding local law." Spector Motor Service v. McLaughlin, 323 U.S. 101, 105, 65 S.Ct. 152, 154, 89 L.Ed. 101 (1944). See e. g., Leiter Minerals, Inc. v. United States, 352 U.S. 220, 77 S.Ct. 287, 1 L.Ed.2d 267 (1957); City of Meridian v. Southern Bell Telephone & Telegraph Company, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959); Harrison v. N.A.A.C.P., 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); Fornaris v. Ridge Tool Company, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971). Drawing upon *Meridian,* the *Reetz* Court recently articulated the controlling principles in terms which seem strikingly apposite to the instant case:

> Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. . . . That is especially desirable where the questions of state law are enmeshed with federal questions. . . . Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty—certainly for a federal court. . . . In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, *the federal court should hold its hand, lest it render a constitutional decision unnecessarily.* (Emphasis added).

397 U.S. 41 at 85, 90 S.Ct. 788 at 789.

This Court is mindful, of course, that the abstention doctrine is not to be casually invoked and is appropriate "only in narrowly limited 'special circumstances.'" Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 395, 19 L.Ed.2d 444 (1967). However, a recent decision squarely in point from the Court of Appeals for this Circuit makes it apparent that the circumstances requiring abstention are here present. Harris v. Samuels, 440 F.2d 748 (5th Cir. 1971), certiorari denied 404 U.S. 832, 92 S.Ct. 77, 30 L.Ed. 2d 62 (1971), was a class action brought by certain Alabama college students against a county board of voting registrars and its members. Plaintiff sought to compel the officials to grant voter registration to persons attending college in a university community, contending that such was required by proper administration of state law. *As in the instant case, the plaintiffs in Harris sought federal relief on the ground that the defendants had erroneously construed the applicable state statute in a manner which violated plaintiffs' federal constitutional rights.* The state election law in question, like that in the instant case, was subsceptible of at least two constructions, one of which would have given plaintiffs their victory short of reaching the federal

constitutional issue. Also, as in the case at bar, the Alabama courts had never been afforded an occasion to expound the statute. Under these circumstances, the Court of Appeals held that the district court should have abstained until the state courts authoritatively construed the statute or until efforts to obtain such a construction had been exhausted. Harking back to *Pullman*, the Court of Appeals observed that "(n)either the federal district court nor this Court should construe the State statute, for that would be a mere tentative answer which may be displaced tomorrow by a controlling State adjudication. [Citing *Pullman*]. Nor should the federal courts proceed to a premature and perhaps unnecessary constitutional adjudication." 440 F.2d 752, 753. As the holding in *Harris* is predicated upon precisely those factors present in the instant case, the precedent controls and it becomes the duty of this Court to abstain. Accordingly, the appropriate disposition of this action is dismissal of plaintiffs' complaint.[6]

### IV. *Recapitulation*

To recapitulate, this Court holds as follows:

(1) The result reached by the action or non-action of defendant commissioners, i. e., the two-year postponement of the franchise for transferred voters, is not a violation of the Fourteenth Amendment. Pate v. El Paso County, supra.

(2) To the extent that the foregoing result is said to be rendered unconstitutional in the instant case because it was reached through violation of a state statute, the existence and form of the federal constitutional question thus posed are utterly contingent upon the resolution of an ambiguous and unsettled issue of state statutory construction, and

this Court must accordingly abstain. Railroad Commission v. Pullman, Harris v. Samuels, supra.

(3) It follows that this action must be dismissed. This Memorandum and Order shall constitute the findings of fact and conclusions of law of this Court. The Clerk shall file same, together with the Final Judgment and furnish copies of each to all counsel.

---

6. This Court is cognizant that retention of jurisdiction is generally viewed as preferable to dismissal in *Pullman*-type abstention cases. Zwickler v. Koota, 389 U.S. 241, 244 n. 4, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). However, it is concluded that dismissal is appropriate in the instant case for the reasons expressed in Hander v. San Jacinto Junior College, 325 F.Supp. 1019 (S.D.Tex. 1971). Additionally, as Circuit Judge Wisdom pointed out in Barrett v. Atlantic Richfield Company, 444 F.2d 38 (5th Cir. 1971), the subtleties of Texas decisional law relating to justiciability render it appropriate for an abstaining court to dismiss, even in *Pullman*-type cases.