**Arthur Ray WILSON et al., Plaintiffs,**

v.

**Leroy E. SYMM, County Tax Assessor-Collector, Waller County, Texas, and Bob Bullock, Secretary of State of the State of Texas, Defendants.**

**Civ. A. No. 71-H-1437.**

United States District Court,
S. D. Texas,
Houston Division.
March 29, 1972.

David R. Richards, of Clinton & Richards, Austin, Tex., for plaintiffs.

Will Sears, and David F. Beale, of Sears & Burns, Houston, Tex., for defendant Leroy Symm.

Crawford C. Martin, Atty. Gen., W. O. Shultz, Asst. Atty. Gen., Austin, Tex., for defendant Secretary of State.

## MEMORANDUM AND ORDER

NOEL, District Judge.

This action is brought by five college students enrolled at Prairie View Agricultural and Mechanical College in Prairie View, Texas, seeking to compel the County Tax Assessor-Collector of Waller County, Texas, in which the college is located, to register plaintiffs to vote. Although originally pleaded as a class action, that aspect of the complaint has been abandoned and plaintiffs now proceed in their own behalf. Jurisdiction is predicated upon 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343.

In the third amended complaint, it is alleged that each plaintiff is over eighteen years of age, is a resident of Waller County, is eligible to vote under state law, and has filed an application for voter registration with defendant Symm. Plaintiffs assert that Symm unconstitutionally declined to register them to vote, after having impermissibly required that they and other students complete a questionnaire as a condition of consideration for registration. It is argued that this constitutes a discrimination against plaintiffs on the basis of their status as students and their age, in violation of the Fourteenth and Twenty-Sixth Amendments. In so abridging plaintiffs' rights, defendant Symm is conceded to be acting pursuant to a Texas statute, Tex.Elec.Code Ann. art 5.08 (k), V.A.T.S., which creates a rebuttable presumption of non-residency on the part of college students. Plaintiffs argue that this statutory presumption is irrational and singles out students for special treatment in determining their residency, thus "fencing them out" from the franchise in the absence of a compelling state interest for doing so. Additionally, the degree of discretion which is reposed by the statute in defendant Symm is attacked as violative of due process of law. Finally, plaintiffs argue that the Texas student residency scheme, coupled with the federal census practice of counting college students where they are found, produces a malapportionment in contravention of the one-man-one-vote requirement of the Federal Constitution. Note should be taken of a contention which was abandoned. As originally pleaded, in the original complaint and the first amendment of same, plaintiffs alleged racial discrimination on the part of defendants in violation of the Federal Constitution as well as the Voting Rights Act, 42 U.S.C. § 1971. This ground was voluntarily and totally deleted in the plaintiffs' final amended pleading upon which plaintiffs proceeded to trial.

Although this suit was filed on December 15, 1971, it did not fall upon this Court's docket until shortly thereafter. It was immediately set down for preliminary pretrial hearing on January 18, 1972, at which hearing discovery matters were considered, leave to amend was granted both parties, prospective motions were discussed and a briefing schedule was established. On February 3, 1972, a hearing was had on the motions, following which counsel were given additional time to file authorities and briefs on plaintiffs' request for convocation of a three-judge court. For the reasons assigned in its Memorandum and Order of February 16, 1972, this Court declined to notify the Chief Judge of the Circuit for the purpose of convening such a court. Review of this Order was sought by interlocutory appeal as well as mandamus, both without success. See Wilson v. Noel, No. 72–1466 (5th Cir., March 9, 1972). The trial setting of March 13, 1972, was passed for one week upon motion of plaintiffs. On March 20, 1972, trial was had in Houston, Texas, at which time evidence was received and the arguments of counsel were heard. The Court now enters its findings of fact and conclusions of law. Rule 52(a), Fed. R.Civ.P.

## FINDINGS OF FACT

(1) The five plaintiffs are regularly enrolled students at Prairie View Agricultural and Mechanical College ("Prairie View") in Waller County, Texas. All plaintiffs are over eighteen years of age and are members of the Negro race. Prairie View is a state-supported four-year college with a total enrollment of approximately 4000 students, more than 95% of whom are Negroes.

(2) Defendant Bullock is the Secretary of State of the State of Texas. As such, he is the State's chief election officer. Tex.Elec.Code Ann. art. 1.03. Defendant Leroy E. Symm is the county tax assessor-collector for Waller County and has held that office since 1956. As such, he is the officer responsible for the registration of voters. Tex.Elec. Code Ann. art 5.09a. Waller County, a

predominantly rural county, has a population of approximately 14,000 persons, of whom 4600 are registered voters. Defendant Symm is personally acquainted with approximately 60% of those registered.

(3) To facilitate the performance of his duties, which include the determination of the residency of applicants for voter registration, defendant Symm has prepared a Questionnaire Pertaining to Residency (hereafter "questionnaire") for use beginning in the Fall of 1971.[1] It is composed of sixteen short questions, which are set out in the margin.[2] It was formulated by Symm with the assistance of the County Attorney, but has not been formally approved by any state officer. When a potential student registrant completes his Application for Voter Registration Certificate, he must place a mark in a space which reads "check here if serviceman or student". The categories of students and servicemen are completely overlapping in this instance, as the only military detachment in Waller County is the Reserve Officers Training Corps unit at Prairie View. An applicant who has thus marked the blank of the Registration Certificate is then required to complete the questionnaire. Therefore, the only applicants who are required to complete the questionnaire are students. In effect, the function of the questionnaire is to provide student applicants a means by which to overcome the statutory presumption of non-residency which is applicable to them.

(4) There are only two exceptions to this general practice. Defendant Symm does not require the questionnaire to be completed by married students or students who have parents residing in Waller County. Apparently, these two categories of students are permitted to register without further ado.

■ (5) Defendant Symm testified that his purpose in requiring that students complete the questionnaire is simply to provide himself with a factual basis for applying and enforcing the general residency statute, including the portion relating to student residency. The Court accepts this testimony and finds that Symm was so motivated and has acted at all times in good faith.

(6) Each plaintiff testified in his own behalf, and the following data pertinent to the residency determination was elicited.

(6-a) Arthur Ray Wilson, age 22 and a native of Beaumont, Texas, has attended Prairie View for four years and states that he considers Waller County his home and would like to return there upon completion of a post-graduate military commitment. He has been employed by Prairie View as a student counselor for three years but has no future job commitment there. He is unmarried and was living in a campus dormitory at the time he applied for registration, although he has since moved to an off-campus apartment. He owns an automobile which is licensed in Waller County.

---

1. Prior to 1971, a similar, though shorter, form was used for this purpose.

2. The questionnaire has a space for the applicant's name and address, and then inquires: Are you a college student? If so, where do you attend school? How long have you been a student at such school? Where do you live while in college? How long have you lived in Texas? In Waller County? Do you intend to reside in Waller County indefinitely? How long have you considered yourself to be a bona fide resident of Waller County? What do you plan to do when you finish your college education? Do you have a job or position in Waller County? Own any home or other property in Waller County? Have an automobile registered in Waller County? Have a telephone listing in Waller County? Belong to a Church, Club or some Waller County organization other than college related? If so, please name them. Where do you live when the college is not in session? What address is listed as your home address with the College? Give any other information which might be helpful.

At the end of the questionnaire, there are spaces for the date and the applicant's signature.

(6–b) Randolph Grayson, age 29 and a native of Gulfport, Mississippi, has attended Prairie View and lived in Waller County for four years, and states that he will not return to Gulfport upon graduation as he considers Waller County to be his home. He came directly to Prairie Veiw upon his discharge from the Army, and now lives in an apartment in Hempstead, Texas. He has no future job commitment, but intends to stand for election to the office of precinct constable in Waller County. Acting upon the advice of an attorney, plaintiff Grayson declined to complete the residency questionnaire.

(6–c) Donnie Gene Young, age 20 and a native of Houston, Texas, has attended Prairie View and lived in Waller County for two and one-half years, and states that he intends to return to Prairie View and work for the college upon completion of his post-graduate military obligation. He presently has no job promised to him. He now lives off-campus, at the home of his aunt.

(6–d) Leodies U. A. Simmons, age 19 and a native of Weirgate, Texas, has attended Prairie View and lived in Waller County for two years, and testified that he intends to remain there indefinitely. He lives on-campus in a dormitory. This plaintiff had not applied for voter registration at the time that suit was filed, contrary to the assertion in the complaint which bears his name. Until a few days before trial, he was not even aware that a suit had been brought in which he was a plaintiff.

(6–e) Billy Ray Toliver, age 27 and a native of Houston, Texas, has attended Prairie View and lived in Waller County intermittently for the past several years. It appears that he attended Prairie View for two years, entered the military service for two years, was then employed for a period in Houston where he

lived with his parents, and has now returned to Prairie View. He has no firm employment prospects in Waller County but states that he would like to remain there upon graduation. Upon the advice of an attorney, he declined to complete the residency questionnaire.

■ (7) Although defendant Symm did not rely upon it in making his determination, the fact was brought out at trial that each of the plaintiffs, upon registering for enrollment at Prairie View in August of 1971, represented to the college's registrar that his home was elsewhere than Waller County. Plaintiff Wilson gave a home address in Beaumont, Texas. Plaintiff Simmons gave a home address in Weirgate, Texas. The other plaintiffs gave home addresses in Houston, Texas. These recent representations in respect to residency are, of course, inconsistent with the assertions made by plaintiffs at trial.[3] These prior inconsistent statements, made before this litigation was a prospect, are entitled to great weight on the point of credibility and lead the Court to find that plaintiffs do not in fact regard themselves as residents of Waller County. As stated in Conclusion of Law I below, the question of plaintiffs' residency is not before this Court. However, should this conclusion be erroneous and should the question of residency be presented, this Court would find, and does find, that plaintiffs are not residents of Waller County.

(8) Defendant Symm based his decision upon an assessment of a student applicant's total relationship to the community, and formulated his questionnaire accordingly. However, Symm testified that he found the following factors particularly persuasive, and would invariably register students who: (a) had parents residing in Waller County, (b) were married and living with their spouses

---

3. On cross-examination, each of plaintiffs testified that he had not representd to college officials that he resided elsewhere than Prairie View. On rebuttal, defendants introduced properly authenticated copies of the "assignment card" of each

plaintiff containing the representations as to home address alluded to in the text above. Although this Court is reluctant to attribute intentional falsehood to any witness, suffice it to say that plaintiffs' credibility was severely shaken.

in Waller County, (c) owned real property in Waller County, or (d) had a firm offer of employment in Waller County upon graduation.

(9) For the year 1972, defendant Symm has registered approximately forty Prairie View student applicants out of a total of approximately seventy-five who applied. He has therefore accepted more student applications than he has rejected. This indicates that the rebuttable presumption of student non-residency, as administered in Waller County, is frequently rebutted and is clearly not an insurmountable barrier to the franchise.

(10) None of the plaintiffs sought de novo review of Symm's decision by means of perfecting an accelerated appeal to the Waller County District Court, as provided by Tex.Elec.Code Ann. art. 5.17a.

(11) Defendant Symm declined to register plaintiffs to vote after reaching a good-faith determination that plaintiffs were not residents of Waller County within contemplation of the state residency statute. This conclusion, necessarily judgmental in nature, was neither arbitrary nor capricious. In the case of plaintiffs Wilson, Young and Simmons, this determination was based upon information provided in the questionnaire. In the case of plaintiffs Toliver and Grayson, this determination was based upon the refusal of the applicants to complete or sign the questionnaire. In no case was the determination attributable to the applicants' age or their status as students, per se. Furthermore, although the issue was abandoned and was therefore not directly raised by either the pleadings or the proof, it is appropriate to observe that the record contains not the slightest suggestion of discrimination on the basis of race. Indeed, on direct examination by plaintiffs' counsel, defendant Symm testified that no application was rejected by reason of the applicant's race. The Court accepts this testimony as credible, and so finds.

## CONCLUSIONS OF LAW

(I) At the outset, it must be emphasized that plaintiffs do not urge this Court to review defendant Symm's determination of plaintiffs' residency. Plaintiffs do not contend that Symm has erroneously applied the state student residency statute, nor do they contend that a correct application of the statute would achieve the desired relief. Indeed, if such a contention were offered, it would clearly be the duty of this Court to abstain pending an application of the statute by a state court. Harris v. Samuels, 440 F.2d 748 (5th Cir. 1971), cert. denied 404 U.S. 832, 92 S.Ct. 77, 30 L.Ed. 2d 62 (1971); Romero v. Coldwell, 455 F.2d 1163 (5th Cir., 1972); Carr v. Brazoria County, 341 F.Supp. 155 (S.D. Tex., 1972). Rather, it is plaintiffs' position that the Texas student residency statute, even when correctly applied, violates the Federal Constitution.

(II) Also, it should be strongly reiterated that this is not a racial discrimination case. It is a student voting case, and the fact that all plaintiffs are Negroes is no more than a fortuitous consequence of the fact that the only aggregation of college students in Waller County happens to be at Prairie View, which for historical reasons has a predominantly Negro student body. It follows that the statutory and decisional law relating to racial disfranchisement is for the most part irrelevant to this suit.

(III) The specific statutory provision which is assailed, Article 5.08(k) of the Texas Election Code, must be read in pari materia with its companion provisions. The statutory scheme relating to residence is embodied in Article 5.08 which provides in relevant part:

(a) As used in this code, the word 'residence' means domicile; i. e., one's home and fixed place of habitation to which he intends to return after any temporary absence.

(b) For the purpose of voting, residence shall be determined in accordance with the common law rules as

enunciated by the courts of this state and the following statutory rules; but in case of a conflict, the statutory rules shall control.

(c) A person shall not be considered to have lost his residence by leaving his home to go to another place for temporary purposes only.

(d) A person shall not be considered to have gained a residence in any place to which he has come for temporary purposes only, without the intention of making such place his home.

(e) [Relates to single persons and separated spouses.]

(f) [Relates to married men living with family.]

(g) [Relates to married men living apart from family.]

(h) [Relates to married women.]

(i) [Relates to employees of federal and state governments.]

(j) [Relates to military personnel.]

(k) The residence of a student in a school, college, or university shall be construed to be where his home was before he became such student unless he has become a bona fide resident of the place where he is living while attending school or of some other place. A student shall not be considered to have acquired a residence at the place where he lives while attending school unless he intends to remain there and to make that place his home indefinitely after he ceases to be a student.

(*l*) [Relates to inmates of public charitable institutions.]

In support of their facial constitutional attack upon Article 5.08(k), plaintiffs contend that it is based upon an irrational presumption which singles out students for special treatment in determining their residency, in the absence of a compelling state interest for doing so. Further, it is alleged that the statute "fences students out of city and county elections, while allowing others to exercise the franchise, although students do not have the 'degree of disinterest' required by the United States Supreme Court to justify exclusion from the franchise in Waller County."

■ In assessing the validity of plaintiffs' equal protection attack upon the statute, we need look no further than Carrington v. Rash, 380 U.S. 89, 85 S.Ct. 775, 13 L.Ed.2d 675 (1965), in which the challenged statute was specifically approved. *Carrington* involved an attack upon the federal constitutionality of a provision of the Texas Constitution which flatly prohibited military personnel from establishing voting residency in Texas. This was an absolute prohibition from which no administrative escape was permitted, i. e., there was no means provided by which a soldier could establish bona fide residency in the county where he was stationed, thus overcoming the bar. In justification, the State first argued that the provision was necessary to prevent domination of local political affairs by large concentrations of soliders, who might not be ideal voting citizens due to their short-term interest in the community and their obvious susceptibility to military command influence. The Court summarily rejected these attempts to rationalize the total disfranchisement of soldiers, observing that " '(f)encing out' from the franchise a sector of the population because of the way they may vote is constitutionally impermissible." 380 U.S. at 94, 85 S.Ct. at 779.

The Court's treatment of the State's second argument in *Carrington* is of immediate relevance, and, indeed, controls the issue at bar. The State contended that its voting ban on military personnel was justified because of the transient nature of service in the armed forces, and was thus necessary to protect the integrity of its residence qualification. The Court did not question the validity of the residence requirement; rather, it stated that "(w)e stress—and this a theme to be reiterated—that Texas has the right to require that all military personnel enrolled to vote be bona fide residents of the community." 380 U.S. at 93, 85 S.Ct. at 779. However, in achieving that end, it was not permissible for

Texas to employ the blunderbuss device of automatically denying the franchise to all soldiers. An insistence upon community residency was permissible, so long as the determination was made by a more discriminating device than disfranchisement of an entire class which is legislatively deemed suspect of transiency. As the Court stated the critical point:

> But only where military personnel are involved has Texas been unwilling to develop more precise tests to determine the bona fides of an individual claiming to have actually made his home in the State long enough to vote. The State's law reports disclose that there have been many cases where the local election officials have determined the issue of bona fide residence. These officials and the courts reviewing their actions have required a 'freely exercised intention' of remaining within the State, Harrison v. Chesshir, [Tex.Civ.App.], 316 S.W.2d 909, 915. The declarations of voters concerning their intent to reside in the State and in a particular county is often not conclusive; the election officials may look to the actual facts and circumstances. Stratton v. Hall [Tex.Civ.App.], 90 S.W.2d 865, 866. *By statute* [citing Article 5.08], *Texas deals with particular categories of citizens who, like soldiers, present specialized problems in determining residence. Students at colleges and universities in Texas, patients in hospitals and other institutions within the State, and civilian employees of the United States Government may b̓e as transient as military personnel. But all of them are given at least an opportunity to show the election offi-*

*cials that they are bona fide residents.*

380 U.S. at 95, 85 S.Ct. at 779 (emphasis added).

▮ From the emphasized language, which specifically refers to the precise statute [4] under attack and makes specific reference to its categorization of "students at colleges and universities in Texas", it is obvious that the State is entitled to assume that students are transients in their university communities, so long as a reasonable opportunity is afforded such students to make a showing to the contrary. *Carrington* makes it clear beyond cavil that the State Legislature, having reached the rational conclusion that college and university students "present specialized problems in determining residence", is empowered to clothe such students with a rebuttable presumption of non-residency in their college towns. In view of its specific approval in *Carrington* some seven years ago, this Court must conclude that the challenged provision, fairly and evenhandedly administered, is on its face constitutionally unobjectionable.

More recently, in Evans v. Cornman, 398 U.S. 419, 90 S.Ct. 1752, 26 L.Ed.2d 370 (1970), the Board of Registry of Montgomery County, Maryland, struck from the voting rolls the names of all residents of a federal medical facility located within the boundaries of that county. The Board was apparently actuated by its belief that inhabitants of a federal enclave automatically failed to meet the residency requirements of the State Constitution. In effect, the Board erected precisely the sort of irrebuttable presumption of non-residency which was condemned in *Carrington.* Predictably, a three-judge federal district court en-

---

4. The Article 5.08 cited with approval by the Court in *Carrington* was amended in 1967. The rebuttable presumption of non-residency, as applicable to students, remained substantially the same. The former statute provided that "(t)he 'residence' of a single man is where he usually sleeps at night; that of a married man is where his wife resides, or if he be permanently separated from his wife, his residence is where he usually sleeps at night; provided, that the residence of one . . . . who is a student of a school, college, or university, shall be construed to be where his home was before he became such . . . . student, unless he has become a bona fide resident in the place where he is . . . . such student . . . . ."

joined the Board's action as violative of the Equal Protection Clause. In affirming, the Supreme Court relied upon *Carrington*, but was careful to reiterate that a State is not precluded from establishing machinery for preserving the integrity of its lawful residency requirements:

> *Maryland may, of course, require that "all applicants for the vote actually fulfill the requirements of bona fide residence."* Carrington v. Rash, 380 U.S. 89, 96 [85 S.Ct. 775, 780, 13 L.Ed. 2d 675 (1965)]. *"But if they are in fact residents, with the intention of making [the State] their home indefinitely, they, as all other qualified residents, have a right to an equal opportunity for political representation."* Id., at 94 [85 S.Ct. 775 at 779].

398 U.S. at 421, 90 S.Ct. at 1754 (emphasis added).

Even more recently decided, and of considerable significance, is Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972), in which the Supreme Court struck down Tennessee's durational residency requirement as violative of the Equal Protection Clause. *Dunn* was a *Carrington*-type case, and the Court's repeated citations to *Carrington*, as well as its approving discussion of *Carrington*, suggest that *Carrington* is still very much alive in all its aspects.

The plaintiff in *Dunn* moved to Tennessee less than two months before a primary election, and was accordingly rebuffed in his attempted registration because of failure to satisfy the State's constitutional and statutory requirement of twelve months residency in the State and three months residency in the county of registration. Despite his noncompliance with the durational requirements, it was undisputed that the plaintiff was a bona fide resident of the State and county when he attempted to register. The Court held that the State had shown no compelling justification for automatically and completely disfranchising all new arrivals, thus absolutely denying their right to vote and severely penalizing their right to interstate travel. Once

again, however, as in *Carrington* and *Evans*, the Court took pains to emphasis that the States are empowered to establish "appropriately defined and uniformly applied bona fide residence requirements", at 342, n. 13, 92 S.Ct. at 1003 and "to require that voters be bona fide residents of the relevant political subdivision." Id. at 343, 92 S.Ct. at 1004. Further, in administering such a requirement, a State's election officials may require production of "objective information" relevant to the question of bona fide residence. Id. at 348, 92 S.Ct. at 1006.

The constitutional infirmity of the Tennessee statute involved in *Dunn* was that a durational residence requirement amounts to a conclusive and inescapable presumption that recent arrivals are not residents. Recognizing that "(t)he State's legitimate purpose is to determine whether certain persons in the community are bona fide residents", Id., at 351, 92 S.Ct. at 1007, the Court simply forbade the States to make that determination on the basis of a durational residency test which, though administratively convenient, had the inevitable result of lumping together and disfranchising all new arrivals—both bona fide residents and non-residents alike. Like the Texas provision in *Carrington* and the Board's practice in *Evans*, Tennessee's dragnet residency classification was "all too imprecise." Id. at 351, 92 S.Ct. at 1007.

Quite significantly, the *Dunn* Court cited *Carrington* for the proposition that Tennessee remained free to inquire "on an *individualized basis* whether one recently arrived in the community is in fact a resident, although of course there will always be difficult cases." Id. at 351, 92 S.Ct. at 1007 (emphasis added). In protecting the integrity of the residency requirement, the Court noted, the purpose served by the unconstitutional irrebuttable presumption could as well be served by an "individualized inquiry" directed at new arrivals for the purpose of assessing compliance with Tennessee's test for bona fide residence. It is precisely such an "individualized inquiry"

which defendant Symm, acting under Article 5.08(k), directs at student applicants. In view of *Evans'* and *Dunn's* reiteration of the qualifying principle in *Carrington*, this Court takes it to be still the law that a State may enforce a valid local residency requirement and—when confronted by a class of persons which presents special problems in determining residency—may employ inquiry procedures (such as the questionnaire in the instant case) reasonably related to that end.

This Court is mindful, of course, that other courts have in recent months reached a contrary result on equal protection grounds.[5] However, none of these cases deals adequately with *Carrington*. Albeit dictum, the language in *Carrington*, supported by that in *Evans* and *Dunn*, represents a clear expression by the United States Supreme Court that the application of a controvertible presumption of non-residency to certain inherently transient classes does not offend the Constitution. In holding to the contrary, it is incumbent upon a lower court to notice and distinguish or otherwise treat of this prestigious authority. Having failed to do so, the cases relied upon by plaintiffs are deemed to be unpersuasive.

Accordingly, this Court concludes that Article 5.08(k), on its face and as applied by defendant Symm, does not violate the Equal Protection Clause of the Federal Constitution.

■ (IV) It is also asserted that Article 5.08(k) is invalid because it vests untrammeled discretion in the assessor-collector without sufficiently defining the standards to guide that discretion.

This assertion is without merit. By its nature, the concept of residence defies precise statutory explication, as it depends upon the circumstances of each case and embraces various elements such as volition, intention and actions. Mills v. Bartlett, 377 S.W.2d 636 (Tex.1964). The Texas statute provides that "residence shall be determined in accordance with the common law rules as enunciated by the courts of this state and the following statutory rules . . . " Tex. Elec.Code Ann. art. 5.08(b). The statute then proceeds to set out with more particularity the rules applicable to several categories of potentially transient citizens, including students. See Conclusion of Law III, supra. In this respect, the statute is considerably more detailed than many of its kind, for over half the States make no mention of students in defining residency for voting purposes. See P. R. Rentenback, Student Voting Rights in University Communities, 6 Harv.Civ.Rights—Civ.Lib.L.Rev. 397, 407 n. 70 (1971). In any event, as the Supreme Court noted in *Carrington*, the Texas law reports are replete with cases expounding the subject of bona fide residency. A conscientious assessor-collector is not without standards to guide his determination of an applicant's residency, and that determination is subject to expeditious and de novo scrutiny in the Texas courts. Accordingly, this Court concludes that Article 5.08(k) is not void under the Federal Constitution by reason of vagueness, indefiniteness, or delegation of unbridled discretion.

■ (V) Plaintiffs' argument predicated upon the Twenty-Sixth Amendment must also fail. In ultimate finding of

---

5. See, e. g., Anderson v. Brown, 332 F. Supp. 1195 (S.D.Ohio 1971) (per curiam); Bright v. Baesler, 336 F.Supp. 527 (E.D.Ky.1971); Kennedy v. Meskill, C.A. No. 14,548 (D.Conn.1971); Phillips v. Bing, C.A. No. 71–234–D (E.D. Ill.1972).

Bright, Kennedy and Phillips involved discriminatory misapplication of residency statutes by local officials. The Ohio statute involved in *Anderson* applied a particularly severe standard to students

which, unlike the Texas statute, approached absolute disfranchisement. In any event, as noted in the text above, none of these cases deals satisfactorily with *Carrington*. By contrast, in at least one student voting case the District Court recognized the significance of *Carrington* and reached what this Court deems to be the correct result. Whittington v. Board of Elections for Onondaga County, 320 F. Supp. 889 (N.D.N.Y.1970).

**18**

fact #11, supra, the Court found that plaintiffs were denied registration on the ground of non-residency, and not because two of them are between the ages of eighteen and twenty-one. It follows, of course, that their right to vote has not been "denied or abridged . . . . on account of age." U.S.Const. Amend. XXVI.

■ (VI) The presumption of student non-residency is neither irrational nor imprecise. *Carrington* teaches that such a statutory presumption may constitutionally attach to "particular categories of citizens who, like soldiers, present specialized problems in determining residence", so long as they "are given at least an opportunity to show the election officials that they are bona fide residents." 380 U.S. at 95, 85 S.Ct. at 779, 13 L.Ed.2d 675. As Texas affords to student applicants such an opportunity, the rebuttable presumption is constitutionally sound.

■ (VII) Finally, plaintiffs contend that the one-man-one-vote principle, Reynolds v. Sims, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), requires that Prairie View students be permitted to vote in Waller County because that is where they are enumerated as residents by the United States Bureau of Census for purposes of representation. See Borough of Bethel Park v. Stans, 449 F.2d 575 (3rd Cir. 1971). This rather esoteric theory has been advanced in the literature. See Note, Student Voting and Apportionment: The "Rotten Boroughs" of Academia, 81 Yale L.J. 35 (1971). However, the parties have cited and the Court has found no persuasive judicial authority adopting such an approach. This Court is not inclined to embark upon this pioneering endeavor for a number of reasons, not the least of which is a reluctance to lead the federal courts yet further into the nettlesome wonderland of arithmetical abstractions and judicially unmanageable standards which has been so aptly described as a "political thicket." Colegrove v. Green, 328 U.S. 549, 556, 66 S.Ct. 1198, 90 L.Ed. 1432 (1946) (opin-

ion of Frankfurter, J.). In any event, plaintiffs produced no evidence on this point, and made no attempt to demonstrate what degree of malapportionment, if any, results from Prairie View students voting in counties other than Waller. Therefore, because of the dearth of supportive authority and the absence of an evidentiary record, the malapportionment argument must be rejected.

(VIII) For the foregoing reasons, judgment shall enter for defendants.

(IX) To the extent that any of the foregoing findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

The Clerk shall send copies of this *Memorandum and Order* to all counsel. Counsel for defendants shall submit a proposed form of judgment consistent with the foregoing, after approval as to form by opposing counsel.